■ In the Matter of SHAWN BB., and Others, Children Alleged to be Abused and/or Neglected. CORTLAND COUNTY DEPARTMENT OF SOCIAL SERVICES, Appellant; CHERYL CC., Respondent. (And Another Related Proceeding.) [657 NYS2d 239] —Casey, J. Appeal from an order of the Family Court of Cortland County (Frawley, J.H.O.), entered June 17, 1996, which dismissed petitioner's applications, in two proceedings pursuant to Family Court Act article 10, to adjudicate respondents' children to be abused and/or neglected.

As a result of findings of neglect and/or abuse by their biological parents, Shawn (born in 1989), Ashleigh (born in 1990) and Samuel (born in 1992), the three children who are the subject of these proceedings, were placed with the Johnston County Department of Social Services (hereinafter JCDSS) in North Carolina. Pending approval of custody and permanent placement pursuant to the Interstate Compact on the Placement of Children (*see*, Social Services Law § 374-a), JCDSS permitted respondents, the children's maternal aunt and uncle, to take the children to Cortland County on an "extended visit".

The present abuse/neglect petitions stem from a hotline report dated February 23, 1996 which alleged that Ashleigh had bruising on her neck and shoulder as a result of excessive corporal punishment inflicted by respondents the previous day. Upon being informed of these allegations by petitioner, JCDSS sent a caseworker to take the children back to North Carolina on February 26, 1996. Respondents failed, however, to deliver the children to the airport at the scheduled time and stopped sending them to school. As a result, petitioner sought and received permission from Family Court to temporarily remove the children from respondents' home. A fact-finding hearing was ultimately held after which Family Court dismissed the abuse/neglect petitions against respondents. Petitioner now appeals.

Initially, we note that although Family Court found that the proof showed improper physical disciplining of Ashleigh, it dismissed the petitions based on its belief that "this one act" was offset by the fact that the children "have been in the only decent environment that they have ever enjoyed". In essence, therefore, the court inappropriately engaged in a best interest analysis at the fact-finding stage of the proceeding instead of making a determination based on the preponderance of the evidence as required (see, Family Ct Act § 1046 [b] [i]; *Matter of Nicole V.*, 71 NY2d 112, 117). While we agree that the evidence does not support a finding of abuse, we do find that petitioner has met its burden of establishing neglect.

At the fact-finding hearing, petitioner introduced several pictures taken on February 23, 1996 showing bruises on Ashleigh's neck, shoulder, buttocks and thigh. When asked during an interview by one of petitioner's caseworkers how she received these bruises, Ashleigh demonstrated by choking and hitting a stuffed animal. Ashleigh told the caseworker that the marks on her neck were from her uncle and that her aunt had spanked her. This explanation was also given to Susan Ulrich, a pediatric nurse practitioner who had examined Ashleigh on February 23, 1996. Ulrich testified that she observed a ring of lineal, spotty bruising around Ashleigh's neck, which extended onto her left arm and shoulder, and "pinpointed little hemorrhages" on Ashleigh's facial cheeks. There were also linear black and blue areas on her buttocks and thigh. Ulrich testified that these injuries were caused by trauma.

Respondents testified that on February 22, 1996, Ashleigh's school informed them, albeit mistakenly, that Ashleigh had forged a bus pass and would be bringing a note home for them to read. The aunt testified that when she asked Ashleigh about

the note and got no response, she grabbed Ashleigh by the collar, pulled her over her knee and spanked her. The questioning continued and, after two or three more demands, the aunt again spanked Ashleigh, this time on her bare buttocks. When shown the pictures depicting Ashleigh's bruises, the aunt stated that the marks looked like her fingers. She also admitted that she had lost control. The uncle testified that although he too questioned Ashleigh, he did not touch her.

Family Court Act § 1012 (f) defines a neglected child in terms of either impairment or imminent danger of impairment resulting from the failure of someone legally responsible to exercise a minimum degree of care. Specifically included as a type of conduct which constitutes such a failure is the infliction of excessive corporal punishment (Family Ct Act § 1012 [f] [i] [B]). Even a single incident can be sufficient to constitute child neglect (see, Matter of Jeffrey D., 233 AD2d 668, 669-670).

The aunt admitted that she had spanked the children in the past and, in accordance with her religious beliefs, she would continue to do so in the future as this was an appropriate form of punishment. She testified that the force she used in spanking Ashleigh that day was "the same amount that [she] normally use[d] in other spankings". Furthermore, she admitted that while she only used her hand now, given the children's young ages, it would be appropriate to discipline an older child with a stick or a belt, depending on the offense and situation.

Based on the objective evidence presented, a finding of neglect by the aunt is warranted (see, Family Ct Act § 1012 [f]; Matter of Suffolk County Dept. of Social Servs., 215 AD2d 486; Matter of Sharnetta N., 120 AD2d 276, 280). Furthermore, a finding of neglect as to the uncle is also compelled, even if he is not responsible for these particular injuries, as he was aware of and consented to spanking as a form of discipline and allowed the injuries to be inflicted (see, Family Ct Act § 1012 [f] [i] [B]). Finally, inasmuch as "proof of the * * * neglect of one child [is] admissible evidence on the issue of the * * * neglect of any other child" (Family Ct Act § 1046 [a] [i]), we find that Shawn and Samuel are also neglected children, particularly given respondents' poor judgment in these circumstances and their admitted refusal to get counseling to learn better disciplining strategies (see, Matter of Jennifer Q., 235 AD2d 827, 828; Matter of Vincent M., 193 AD2d 398, 403).

In light of this finding, the matter must be remitted for a dispositional hearing. We finally note that although JCDSS remains the custodian of the children pending permanent placement with respondents (see, Matter of Shaida W., 85 NY2d

453), the Interstate Compact does not automatically require the children to be returned to North Carolina. Furthermore, contrary to Family Court's concern, an adjudication of neglect need not result in the children's removal from respondents' home (*see*, Family Ct Act § 1052).

Cardona, P. J., Mikoll, Mercure and Crew III, JJ., concur. Ordered that the order is reversed, on the law and the facts, without costs, petitions granted, the children are adjudicated to be neglected and matter remitted to the Family Court of Cortland County for further proceedings not inconsistent with this Court's decision.