■ In the Matter of JOSHUA R. and Another, Children Alleged to be Neglected and Abused. SAMUEL R., Appellant; ADMINISTRATION FOR CHILDREN'S SERVICES, Respondent, et al., Respondent. [849 NYS2d 246]—

Order of disposition, Family Court, New York County (Rhoda J. Cohen, J.), entered on or about August 3, 2005, which, upon a finding that respondent father neglected and abused Joshua R., and derivatively neglected and abused Isabella R., placed respondent under the supervision of petitioner Administration for Children's Services for a period of 12 months, directed him to comply with therapy, barred him from residing at home, and awarded him weekly supervised visits with the children, modified, on the law and the facts, the findings of abuse and derivative abuse vacated, and otherwise affirmed, without costs.

The finding that respondent father neglected nine-year-old

Joshua was established by a preponderance of the evidence. Following the child's refusal to eat food, respondent shoved the food into his mouth, causing him to vomit, and slapped him in the face with such force as to bloody his nose and bruise his left eye (see Family Ct Act § 1012 [f] [i] [B]; *Matter of Sheneika V.*, 20 AD3d 541 [2005]; *Matter of Shawn BB.*, 239 AD2d 678 [1997]). The finding of derivative neglect was also appropriate inasmuch as respondent's behavior demonstrated such an impaired level of parental judgment as to create a substantial risk of harm for any child in his care (*Matter of Vincent M.*, 193 AD2d 398, 404 [1993]).

However, we modify the order to the extent of vacating the findings of abuse and derivative abuse. Family Court was presented with evidence that respondent believed his behavior in striking Joshua was not excessive. Although not condoning such conduct, we note that the evidence does not support a finding that respondent inflicted an injury to Joshua "which cause[d] or create[d] a substantial risk of death, or serious or protracted disfigurement, or protracted impairment of physical or emotional health or protracted loss or impairment of the function of any bodily organ" (Family Ct Act § 1012 [e] [i]; *see Matter of Rosina W.*, 297 AD2d 639 [2002]).

We have considered respondent's remaining contentions and find them unavailing. Concur—Nardelli, J.P., Gonzalez, McGuire and Kavanagh, JJ.

Sweeny, J., dissents in part in a memorandum as follows: While I concur with the majority on the issue of neglect, I cannot agree that the injuries suffered by Joshua did not constitute abuse.

The evidence adduced at the fact-finding hearing revealed that Hyon Baek, an Administration for Children's Services (ACS) caseworker, was assigned to investigate a report of suspected abuse called in by Joshua's school counselor. He went to respondent's home on November 3, 2004 and the parents, respondents Samuel and Maria, and Joshua and his sister Isabella were present. Samuel denied he had intentionally hit Joshua, claiming he had been "rough playing" and accidentally bumped his head into Joshua's head. Samuel refused to allow Baek to speak to Joshua alone and became belligerent, demanding that Baek "get the f**k out of the house."

Baek left but reentered a short time later with the police. While he spoke with Joshua, Baek heard Samuel yelling and screaming in the background. Joshua told Baek that the previous evening Samuel cooked dinner. When Joshua said he did not want to eat, Samuel shoved food into his mouth and began

screaming and yelling at him repeatedly to eat and to swallow. Joshua gagged and then vomited, causing Samuel to become further enraged. He then struck Joshua with his "open fist" (as per medical report), causing Joshua's nose to bleed and his left eye to become swollen and lacerated. Joshua later denied that his father hit him, but said that he often was angry and yelled. Joshua also related that two years prior to this incident, Samuel hit him with a belt. Baek observed a "circular mark around [Joshua's] left eye which colored the whole left eye" as well as "reddish . . . linear marks" on the left side of his face.

Baek also spoke with Isabella who stated she was taking a nap with her mother Maria at the time of the incident. She woke up because she heard Joshua crying and Samuel screaming. She saw that Joshua's nose was bleeding and there was a towel on the floor with blood on it. Isabella said she heard her father say he had hit Joshua because he did not eat his food, and told Baek that "her father yells at them whenever he smacks them" but refused to elaborate on those statements.

In Baek's second interview with Samuel, he admitted slapping Joshua because he did not eat his food but denied shoving food into Joshua's mouth. Samuel did not believe his behavior was excessive and "showed no remorse whatsoever." He also denied hitting the children in the past or having used a belt to discipline them.

Maria testified that she was taking a nap and was awakened when she heard Samuel "screaming" and "yelling" at Joshua. She asked Joshua what happened and he told her "his father hit him because he wasn't eating his broccoli." Joshua told her that he vomited when his father "pushed him into—pressured him into eating his broccoli . . . he said eat, eat, eat, eat."

Neither Samuel nor Maria took Joshua for medical attention that day. However, certified records from Bellevue Hospital Center, dated November 3, 2004, revealed that Joshua suffered a black left eye with a one-centimeter-by-one-centimeter ecchymosis (a visible extravasation of blood just below the skin surface) above the eyelid and a two-centimeter-by-two-centimeter mark below the eyelid. The records also indicated that Joshua had a nosebleed after being hit by his father.

Samuel was arrested as a result of this incident, and criminal charges were pending at the time of the fact-finding hearing. He was granted visitation, supervised by ACS, on November 16. On January 20, 2005, ACS sought an order suspending visitation because of Samuel's repeated belligerence toward ACS caseworkers, sometimes in front of the children, causing them to cry. The court granted ACS's petition.

In an oral decision after the hearing, the court determined that ACS had proven by a preponderance of the evidence that Samuel had slapped Joshua "hard enough to cause a bloody nose, bruising around his left eye and two linear marks on the side of his face," and that Samuel had pushed food into Joshua's mouth while yelling at him to swallow. The court categorized Samuel's behavior as "totally out of control . . . expos[ing] Joshua to the danger of a very serious injury and it's fortunate that Joshua wasn't more seriously injured . . . Based on the description that I have heard of this man and based upon his behavior in my courtroom and based upon the observations of him during visitation I think there is something very seriously wrong with this man." The court went on to state that Samuel "could have caused [Joshua] very, very severe injuries . . . all because the boy didn't eat his broccoli."

Although there was no formal dispositional hearing, the mental health services report ordered by the court described Samuel as "insulting" and "hostile." Recesses were required during the interview to allow him to regain his composure. Samuel rationalized his behavior in hitting Joshua by saying he had "never gone over the line" and that there were "worse people out there." Eventually, the interview was terminated due to his inability to control his anger.

Family Court Act § 1012 (e) (i) defines child abuse as when a parent "inflicts or allows to be inflicted upon such child physical injury by other than accidental means which causes or creates a substantial risk of death, or serious or protracted disfigurement, or protracted impairment of physical or emotional health or protracted loss or impairment of the function of any bodily organ."

A single incident may support a finding of abuse (*Matter of Pierre M.*, 239 AD2d 262 [1997]). Moreover, "the child need not sustain a serious injury for a finding of abuse as long as the evidence demonstrates that the parent sufficiently endangered the child by creating a substantial risk of serious injury" (*Matter of Angelique H.*, 215 AD2d 318, 319 [1995]). In *Angelique H.* (*supra*), the child's mother intentionally burned her four-year-old's hand by placing it over a lit stove burner to "teach him a lesson" for playing with matches. The child suffered second degree burns, which were treated at the emergency room. Although there was no permanent injury, we held Family Court erred in its finding that no abuse could be made in the absence of medical testimony that the child sustained an injury causing or creating a substantial risk of protracted disfigurement or impairment. This was parental conduct that "could easily result

in serious or protracted disfigurement" and such conduct creating the risk of serious injury can result in a finding of abuse, even if the child does not actually suffer the injury.

*Matter of Rosina W.* (297 AD2d 639 [2002]) does not compel a different result. There an argument between the 17-year-old daughter and her father escalated when the daughter pushed her father and he retaliated by slapping her in the face, causing swelling and a bloodshot eye. The Second Department found that the age of the victim, the nature of the injuries and the isolated nature of the incident did not sustain a finding of abuse.

Here, the nine-year-old child was struck hard enough to cause bruising to the eye and lacerations around the eye. Moreover, food was forcibly shoved into the child's mouth, causing him to gag and eventually vomit. Nor was this apparently an isolated incident, as the record is replete with references to Samuel's uncontrollable temper and belligerence (*cf. Matter of P. Children*, 272 AD2d 211 [2000], *lv denied* 95 NY2d 770 [2000]). It is not hard to envision what may have happened to Joshua had he fallen after being hit or if food was lodged in his throat or esophagus during this incident. Coupled with the lack of immediate medical treatment and the ongoing verbal abuse heaped upon both children by Samuel, it is patently clear that Joshua was "subjected to a substantial risk of physical injury which would be likely to cause serious or protracted disfigurement, or protracted impairment of his physical or emotional health" (*Matter of C. Children*, 183 AD2d 767, 768 [1992]).

It is "well settled that credibility determinations by the Family Court must be accorded due deference since it is in the best position to assess the witnesses" (*Matter of Nasir J.*, 35 AD3d 299, 299 [2006]). The record before us offers ample evidence justifying the finding of abuse, and there is no reason to disturb that determination.