■ In the Matter of PRIA J.L. and Another, Children Alleged to be Neglected. SHARON L., Appellant; ADMINISTRATION FOR CHILDREN'S SERVICES, Respondent. [960 NYS2d 61]—

Order of disposition, Family Court, New York County (Clark V. Richardson, J.), entered on or about August 10, 2011, which, to the extent appealed from as limited by the briefs, brings up for review a fact-finding determination that respondent mother had neglected her daughter, unanimously reversed, on the law and the facts, without costs, the finding of neglect vacated, and the petition dismissed.

Respondent was charged with neglecting her 12-year-old daughter, Pria, and derivatively neglecting her 10-year-old daughter, Amber, by aiding and abetting the infliction of excessive corporal punishment upon the 12 year old by her 27-year-old brother, Dion, on June 8, 2010 (see Family Ct Act §§ 1046 [b] [i]; 1012 [f] [i] [B]; Matter of Joseph C. [Anthony C.], 88 AD3d 478 [1st Dept 2011]). Family Court found that respondent had neglected Pria, but not Amber because an isolated event was involved. Respondent and the attorney for the children appeal from the finding of neglect and the latter seeks dismissal of the petition.

Sandra Gracey, a child protective specialist who met with the child the day after the incident at issue, Patricia Sanger, another caseworker, and respondent, Sharon L., testified at the trial in May 2011. The evidence indicated that on or about June 8, 2010 respondent, Sharon L., orally argued with her 12-year-old daughter because the child had not come directly home after school and had convinced her younger sister, Amber, to stay out as well. Dion, Pria's adult brother, involved himself in the argument, and according to information given to Gracey by Pria, began hitting her. Pria then ran down a staircase and claimed that Dion ran after her and pushed her, causing her to fall and injure her knee. When her brother told her to get up, Pria stated that she could not get up because her knee hurt. Dion then called upstairs, requesting that respondent give him a belt. Respondent asked Amber to give her a belt to give to Dion, which the latter then used to hit Pria on her "hind leg with the belt." Dion then carried Pria back upstairs, "accidentally" banging her knee against the bannister. Neighbors, hearing the commotion, called the police, who came and, after Pria said she could not get up and walk, called for an ambulance. Pria was taken to Beth Israel Hospital, and Dion was arrested. The caseworker who interviewed Pria the next day observed Pria wearing a brace and using a cane because of the injury to her knee, but Pria was fine when next seen by the caseworker several days later.

Although a temporary order of protection (TOP) was issued on behalf of Pria against her brother as a result of the incident,

respondent allowed the brother, who occasionally stayed over, to spend the night of June 24 on an air mattress in the same room with Pria and Amber. No problems were reported.

Respondent testified that, on the day of the incident, Pria had been disrepectful and argumentative with her, and that Pria and Dion got into an argument, with Pria insisting that Dion was not her father. Respondent also stated that when she saw Pria and Dion at the bottom of the stairway, Dion was walking back and forth holding his pants because he had not finished dressing for his work as a security guard. She believed that Dion had asked for a belt to finish dressing and that he had started to put it on, but, when Pria said, "I hate you," removed the belt and started hitting Pria. Respondent stated that she told Dion to "stop whatever you are doing" and cursed at him. Respondent indicated that she had accompanied Pria to the hospital, but she did not attend any of Dion's court dates and heard nothing about the TOP until her mother told her about it on June 21 or 22. Respondent stated that when she next saw Dion on June 24, he denied that an order of protection had been issued. The caseworker informed respondent the next day that an order had been issued.

There was no evidence of any prior incident of corporal punishment by respondent or anyone on her behalf. Nor was there any evidence of serious injury to Pria. Although the Administration for Children's Services (ACS) removed Pria and Amber from respondent's home, putting them under the care of their fathers and then their maternal grandmother, both girls very much wanted to return to respondent, spoke with her by telephone daily, and visited with her regularly. They were unhappy living with the other relatives and being apart.

On June 28, 2011, the Family Court issued its decision, finding that while ACS had proved that Pria had been neglected, there was no basis for a finding of derivative neglect as to Amber because there was only a single incident of corporal punishment and Pria had acted provocatively. The court "utterly reject[ed]" respondent's claim that Dion needed the belt to get dressed for his security guard position, indicating that it was not "plausible" and that respondent, fully aware of the heated argument between her son and daughter, had aided and abetted the infliction of corporal punishment. The court also stated: "That this was an isolated incident does not in and of itself require dismissal. A single incident may be sufficient . . . where the court finds that the gravamen of the complaint was not accidental"

The court further found that there was "insufficient reliable evidence to establish that respondent knew of the existence of

the order of protection" or that she knowingly and voluntarily violated that order by allowing Dion to sleep on the floor in Pria and Amber's room. Indeed, the court found "there is insufficient evidence to show that the respondent, in fact did allow Dion to sleep in his sister's room at all at the time encompassed by the temporary order of protection."

On August 10, 2011, the court ordered that the children be released to the respondent's custody with ACS supervision for six months. The court stated that "notwithstanding the finding itself, which, of course, [is] towards the parent, . . . Pria has issues, and has an attitude, which needs to be addressed, because otherwise, it's just going to continue to put the mother in the same awkward position that she's been in." Among other things, respondent was required to cooperate with a psychological assessment for Pria, resume therapy with Pria, and cooperate with ACS supervision. ACS did not appear before this Court at oral argument, but the attorney for the children reported that there have been no further incidents since the daughters were paroled to respondent's care.

In seeking reversal of the finding of neglect and dismissal of the petition, respondent and the attorney for the children aver that even when accepting all the findings of the Family Court, respondent at most aided and abetted the infliction of corporal punishment on one of her children on one occasion only. While the child was injured sufficiently to warrant medical intervention, the injury occurred when she either fell running away from her brother or was pushed by her brother, or when her knee hit the bannister, and not as a result of the use of the belt furnished by respondent. Further, the brother was the one arrested by the police and charged with assault, not respondent. In addition, Family Court rejected the claim that respondent knowingly violated a TOP. We agree with respondent and the Legal Aid Society.

A "neglected child" is defined as one whose "physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his parent . . . to exercise a minimum degree of care . . . by unreasonably inflicting or allowing to be inflicted harm" (Family Ct Act § 1012 [f] [i] [B]). We find no reason to disturb the court's credibility determination that respondent's explanation for furnishing the belt to her son (i.e., that he needed the belt to complete his work outfit) was not plausible (*see Matter of Amire B. [Selika B.]*, 95 AD3d 632, 632 [1st Dept 2012], *lv denied* 20 NY3d 855 [2013]). However, the finding of neglect based on this single incident should be reversed. There is no evidence

that any emotional or significant physical injury occurred as a result of this incident. At most the child's provocative behavior caused an overreaction on the part of her brother, condoned by her mother. In cases where a legal guardian is found negligent for condoning infliction of corporal punishment on a child by another, there has been a pattern of punishment, as opposed to an isolated incident (*see e.g. Matter of Rayshawn R.*, 309 AD2d 681, 682 [1st Dept 2003]). Here we have only one event.

We have previously reversed findings of neglect based on a single incident or isolated event (*see e.g. Matter of Christian O.*, 51 AD3d 402 [1st Dept 2008] [reversing finding of neglect where a parent kicked the child in the ankle, causing injury when the 11 year old came home late, because it was an isolated event in which the parent lost his temper]; *Matter of Joshua R.*, 47 AD3d 465 [1st Dept 2008] [reversing findings of abuse and derivative abuse where a father shoved food into a child's mouth, causing him to vomit, and slapped the child so hard that he had a bloody nose and a bruised and lacerated eye, even though there was evidence that the father hit the child with a belt two years earlier], *lv denied* 11 NY3d 703 [2008]; *Matter of Rosina W.*, 297 AD2d 639 [2d Dept 2002] [reversing finding of abuse based on an isolated incident of slapping an argumentative 17 year old, causing swelling and a bloodshot eye]; *Matter of Kennya S. [Kensader S.]*, 89 AD3d 570 [1st Dept 2011] [reversing finding of neglect based on an isolated incident of excessive corporal punishment resulting in mild physical injuries]; *Matter of Chanika B.*, 60 AD3d 671 [2d Dept 2009] [reversing neglect finding based on an isolated incident of slapping a child and causing a bloody nose]). The incident forming the basis for the finding here is, if anything, less compelling than those described in the above cited cases.

Accordingly, the finding of neglect should be vacated and the petition dismissed. Concur—Andrias, J.P., Saxe, Moskowitz, Freedman and Abdus-Salaam, JJ.