*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:    January 8, 2015                 517670
_____

In the Matter of CADENCE GG.,
    Alleged to be a Neglected
    Child.

ULSTER COUNTY DEPARTMENT OF
    SOCIAL SERVICES,
                        Respondent;

LINDSAY II.,
                        Appellant.
_____          MEMORANDUM AND ORDER

In the Matter of MARSHALL HH.,
    Alleged to be a Neglected
    Child.

ULSTER COUNTY DEPARTMENT OF
    SOCIAL SERVICES,
                        Respondent;

LINDSAY II.,
                        Appellant.
_____


Calendar Date:   November 18, 2014

Before:   Lahtinen, J.P., McCarthy, Rose, Egan Jr. and Clark, JJ.

_____


        Ted J. Stein, Woodstock, for appellant.

        Heather D. Harp, Ulster County Department of Social
Services, Kingston, for respondent.

        Amy Ingram, Kingston, attorney for the child.

Daniel Gartenstein, Kingston, attorney for the child.

_____

Lahtinen, J.P.

Appeals from two orders of the Family Court of Ulster County (McGinty, J.), entered August 30, 2013, which granted petitioner's applications, in two proceedings pursuant to Family Ct Act article 10, to adjudicate the subject children to be neglected.

Petitioner commenced these neglect proceedings against respondent, the mother of Marshall HH. (born in 2007) and Cadence GG. (born in 2010), based primarily upon the assertion that she was intoxicated during a time that the children were entrusted to her care. On December 25, 2012, Marshall was in respondent's custody and Cadence had been picked up in the morning by her father, Jesse GG. Respondent brought Marshall to a family Christmas party, where, according to her, she consumed only one drink of eggnog with three shots of brandy. She received a ride back to her apartment from a family member, arriving between 7:30 p.m. and 8:00 p.m., and, while Marshall played a video game, she laid down and quickly fell asleep. She recalled that she had been up since 5:30 a.m., had a sore throat and was exhausted from the day's activities.

Shortly thereafter Jesse arrived at respondent's residence since he mistakenly believed that he was supposed to return Cadence by 7:30 p.m. that evening when, in fact, he was not supposed to return the child to respondent until 7:30 a.m. the following day. He found respondent sleeping and he had difficulty waking her. She apparently awoke briefly and he characterized her as appearing "a little buzzed." Nonetheless, he departed leaving Cadence with respondent.

A little after 8:00 p.m., Dale Reynaud, a neighbor who lived in the same building, went to respondent's apartment for a brief visit and found the two children awake, but respondent was sleeping. When Reynaud could not rouse respondent by calling her

name and shaking her, she took the two children — who often visited her apartment and called her "Grammy Dale" — to her apartment.

In the meantime, Jesse had second thoughts about having left Cadence with respondent and, fearing a confrontation with her if he returned to get the child, he enlisted the aid of Sergeant Kevin Richards, a member of the Ulster County Sheriff's Department he had seen while driving. Jesse and Richards returned to find respondent asleep and no children in the apartment. Jesse attempted to awaken respondent and it reportedly took several minutes to do so. According to Richards, when respondent awoke, she did not know the whereabouts of the children and appeared to be intoxicated. Respondent and Jesse proceeded to engage in an argument with each other and then with Richards, and both respondent and Jesse were eventually arrested.

These neglect petitions ensued. Fact-finding and dispositional hearings resulted in Family Court finding both children neglected by respondent and they were placed with their respective fathers. Respondent appeals.

"[A] party seeking to establish neglect must show, by a preponderance of the evidence, first, that a child's physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired and second, that the actual or threatened harm to the child is a consequence of the failure of the parent or caretaker to exercise a minimum degree of care in providing the child with proper supervision or guardianship" (Nicholson v Scoppetta, 3 NY3d 357, 369 [2004] [internal citation omitted]; see Matter of Alyssa OO. [Andrew PP.], 68 AD3d 1158, 1159 [2009]). "In order for danger to be imminent, it must be near or impending, not merely possible" (Matter of Afton C. [James C.], 17 NY3d 1, 9 [2011] [internal quotation marks and citation omitted]), and regarding degree of care "the statutory test is minimum degree of care — not maximum, not best, not ideal" (id. [internal quotation marks and citation omitted]; see Matter of Hannah U. [Dennis U.], 97 AD3d 908, 909 [2012]).

Initially, we note that one factual determination made by Family Court as supporting its finding of neglect was that

respondent allegedly pressured Marshall to take a sip of her eggnog and brandy beverage at the party. The child did not testify, but the court found that his out-of-court statement was sufficiently corroborated because he had made such a statement to two different adults, although he had both denied and affirmed the allegation to one of the adults. While the corroboration requirement is low (see Matter of Katrina CC. [Andrew CC.], 118 AD3d 1064, 1065 [2014]), "[i]t is well settled that 'repetition of an accusation by a child does not corroborate [that] child's prior account'" (id. at 1066, quoting Matter of Nicole V., 71 NY2d 112, 124 [1987]). Here, the out-of-court repetition of the statement did not provide sufficient corroboration and the statement should not have been considered as part of the neglect determination.

Addressing next whether respondent was intoxicated, conflicting proof was presented. Respondent testified that she consumed only the one alcoholic beverage at the party and her testimony was confirmed by other individuals who attended the party. While Jesse's testimony was not entirely consistent, he characterized her as "a little buzzed" and he also stated that she looked exhausted from the day's activities. Respondent's neighbor, Reynaud, noticed a smell of alcohol on respondent's breath when she stopped by after the incident with Jesse and Richards, but Reynaud did not discern any slurring of words by respondent. Based upon the odor of alcohol on her breath and difficulty waking up, as well as her eyes being glassy and bloodshot, Richards opined that she was intoxicated. Richards acknowledged, however, that respondent did not slur her speech nor exhibit difficulty walking or standing. Although the issue is close (cf. Matter of Damian G. [Jacquelyn M.], 88 AD3d 1268, 1271 [2011] [dissenting opn], revd 19 NY3d 841 [2012]), nonetheless deferring to Family Court's credibility determinations (see Matter of Thomas M. [Susan M.], 81 AD3d 1108, 1109 [2011]), there was proof of impairment sufficient to uphold the factual determination that respondent was intoxicated.

However, the proof presented — including the uncontradicted testimony that respondent neither slurred her speech nor had problems ambulating — reflect that she certainly was not highly intoxicated (cf. Matter of Heather D., 17 AD3d 1087, 1087

[2005]), nor was she attempting a dangerous activity such as driving a vehicle with a child as a passenger while intoxicated (cf. Matter of Darcy Y. [Christopher Z.], 103 AD3d 955, 956-957 [2013]).  In fact, respondent and Marshall – who was nearly six years old – received a ride to her apartment where they safely settled in with no reason to believe anything but a quiet evening lay ahead.  Soon Cadence – respondent's almost three-year-old daughter – ended up in her care as a result of Jesse mistakenly returning her 12 hours early.  Nonetheless, within a very short period of time, the children were in the care of an individual who was a grandmother figure to them.  While respondent's conduct was far from ideal and it is possible to speculate about ways that events could have turned out differently for the children, nonetheless, the record fails to establish that the children were in imminent danger, and "merely possible" danger is insufficient to establish neglect (Nicholson v Scoppetta, 3 NY3d at 369).  There was no other proof of neglect and, under the circumstances, this single event was inadequate to constitute neglect.

McCarthy, Rose, Egan Jr. and Clark, JJ., concur.


ORDERED that the orders are reversed, on the law, without costs, and petitions dismissed.


ENTER:

Robert D. Mayberger
Clerk of the Court