■ In the Matter of Jade F. and Another, Alleged to be Neglected Children. Broome County Department of Social Ser-

VICES, Respondent; ASHLEY H. et al., Appellants. [51 NYS3d 236]—

Mulvey, J. Appeals from two orders of the Family Court of Broome County (Connerton, J.), entered November 20, 2015 and December 17, 2015, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate the subject children to be neglected.

Respondent Ashley H. (hereinafter the mother) is the mother of a son (born in 2007) and a daughter (born in 2014). Respondent Calvin F. (hereinafter the boyfriend) is the father of the daughter. At the time of this proceeding, both children resided with respondents. In November 2014, the son appeared at school with bruising to his face and ear. He reported that the boyfriend "flicks" his ear and head-butts him. He also reported that the boyfriend had choked the mother and that he is afraid of him. Other bruises were observed on the son's leg and torso. Following temporary removal of the children, petitioner commenced this proceeding alleging that respondents had neglected the son and the daughter. After a fact-finding hearing, Family Court adjudicated the son to be neglected and the daughter to be derivatively neglected by respondents. Orders of disposition were entered that, among other things, placed the children in the care and custody of petitioner. Respondents appeal.

We affirm. "[A] party seeking to establish neglect must show, by a preponderance of the evidence (*see* Family Ct Act § 1046 [b] [i]), first, that a child's physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired and second, that the actual or threatened harm to the child is a consequence of the failure of the parent or caretaker to exercise a minimum degree of care in providing the child with proper supervision or guardianship" (*Nicholson v Scoppetta*, 3 NY3d 357, 368 [2004]; *see* Family Ct Act § 1012 [f] [i] [B]; *Matter of Cadence GG. [Lindsay II.]*, 124 AD3d 952, 953 [2015]). "When determining whether a parent or guardian has failed to exercise a minimum degree of care, the relevant inquiry is whether a reasonable and prudent parent would have so acted, or failed to act, under the circumstances" (*Matter of Cori XX. [Michael XX.]*, 145 AD3d 1207, 1208 [2016] [internal quotation marks and citations omitted]). Although not specifically defined in the Family Ct Act, "[d]erivative ne-

glect is established where the evidence demonstrates an impairment of parental judgment to the point that it creates a substantial risk of harm for any child left in that parent's care, and the prior neglect determination is sufficiently proximate in time to reasonably conclude that the problematic conditions continue to exist" (*Matter of Warren RR. [Brittany Q.]*, 143 AD3d 1072, 1074 [2016] [internal quotation marks and citations omitted]; *see Matter of Karm'Ny QQ. [Steven QQ.]*, 114 AD3d 1101, 1102 [2014]). "Family Court's findings and credibility determinations are accorded great deference and will not be disturbed unless they lack a sound and substantial basis in the record" (*Matter of Trimble v Trimble*, 125 AD3d 1153, 1154 [2015] [internal quotation marks and citation omitted]).

At the fact-finding hearing, petitioner's caseworkers testified regarding interviews they conducted with the son, the boyfriend's two other children, the mother and the boyfriend. Information from the interviews established that the boyfriend hit the son with his hands and feet and that the son was scared when he witnessed an act of domestic violence between the boyfriend and the mother. The son also reported that he was afraid of being alone with the boyfriend. The caseworker observed red marks on the son's left ear, and bruises on his leg, back, jaw line and above his eyebrow, all of which were depicted in photographs admitted into evidence. The mother denied that she had ever seen the boyfriend hit or injure the son, but admitted that she and the boyfriend fought; significantly, she testified that, in the event of a bad fight, she would telephone her mother to pick her up. A caseworker observed a bruise around the mother's eye, and the mother acknowledged other bruises on her arms. The boyfriend's other two children, ages five and four when interviewed, said that the boyfriend is mean to the son and yells at him. The older child reported that she saw the boyfriend hit the mother in the head and saw a bruise on the mother's head. The younger child said that she saw the boyfriend push the mother against a wall and that the boyfriend hits the mother on the arm. The maternal grandmother confirmed the mother's testimony regarding her request to be picked up as a result of a 3:00 a.m. fight with the boyfriend. She also testified about observing a bruise around the mother's eye.

In his testimony, the boyfriend denied causing any bruising to the son and claimed that the mother got a black eye from falling out of bed. He also denied pushing the mother's face up against a wall or ever seeing bruising on the mother's arms, but admitted that he did not know whether or not he caused

any bruising. The mother claimed that her black eye was caused by an assault by a girl on her block and that she also fell out of bed. The mother denied that the boyfriend caused any of her bruising and offered the explanation that her bruises could have been received at her job where she was constantly running into things or from a coffee table in their living room. The mother admitted that the boyfriend was the one who disciplined the son, but denied that she or the boyfriend caused his bruises. She suggested that the bruises could be the result of play. We also note that Family Court specifically found the mother to be "loud, agitated and bordered on rude during her testimony" and that she "constantly looks at [the boyfriend] when she speaks, rather than the person who is addressing her." Family Court also found the boyfriend's demeanor during his testimony to be hostile and angry. The testimony of the caseworkers revealed that the boyfriend was generally uncooperative during their investigations to the extent that they had to be accompanied by three police officers when attempting to speak with the mother and the boyfriend during their investigations.

"[P]roof of injuries sustained by a child . . . of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the care of such child shall be prima facie evidence of child . . . neglect" (Family Ct Act § 1046 [a] [ii]). Neither the mother nor the boyfriend proffered a reasonable explanation for the marks observed on the son's ear or his other bruises (*see Matter of Ameillia RR. [Megan SS.—Jered RR.]*, 112 AD3d 1083, 1085 [2013]), and their denial of responsibility posed a credibility question for Family Court (*see Matter of Seamus K.*, 33 AD3d 1030, 1033 [2006]). With respect to the boyfriend, it is clear that he committed child neglect by causing physical harm to the son at various times and by committing acts of domestic violence against the mother in the presence of the children (*see Matter of Nichole SS.*, 296 AD2d 618, 619 [2002]). As to his discipline of the son, "even a single incident of excessive corporal punishment can be sufficient to constitute child neglect" (*Matter of Aaliyah Q.*, 55 AD3d 969, 970 [2008]; *see Matter of Shawn BB.*, 239 AD2d 678, 680 [1997]). The mother's failure to intervene, or otherwise protect the son, supports a finding of neglect against her as well (*see Matter of Justin O.*, 28 AD3d 877, 879 [2006]; Family Ct Act § 1012 [f] [i] [B]). She declined to participate in preventive services (*see Matter of Joseph RR. [Lynn TT.]*, 86 AD3d 723, 725 [2011]) and remarked to a caseworker that if the son liked foster care, she would leave him there. Accordingly, we find a sound and substantial basis

exists in the record to support Family Court's determination that respondents neglected the son (*see Matter of Stephanie RR. [Sullivan County Dept. of Social Servs.—Pedro RR.]*, 140 AD3d 1237, 1240 [2016]). We further find that such behavior toward each other and the son "demonstrate[s] such an impaired level of parental judgment as to create a substantial risk of harm for any child in [their] care" (*id.* at 1240 [internal quotation marks, brackets and citations omitted]), and, as such, we decline to disturb the finding that they derivatively neglected the daughter (*see Matter of Alexander TT. [Horace VV.]*, 141 AD3d 762, 763 [2016]).

We are unpersuaded by the boyfriend's argument that there was insufficient corroboration of the son's out-of-court statements. "While the out-of-court statements made by a child relating to any allegations of abuse or neglect are admissible in Family Ct Act article 10 proceedings, they must be corroborated in order to be sufficient to make a fact-finding of abuse or neglect" (*Matter of Katrina CC. [Andrew CC.]*, 118 AD3d 1064, 1065 [2014] [internal quotation marks and citations omitted]). "Such a statement may be corroborated by any evidence tending to support its reliability, and a relatively low degree of corroborative evidence is sufficient" (*id.* [internal quotation marks and citations omitted]; *see Matter of Sasha R.*, 24 AD3d 902, 903 [2005]). The sufficiency and reliability of such corroboration and issues of credibility "are matters entrusted to the sound discretion of Family Court and will not be disturbed unless clearly unsupported by the record" (*Matter of Justin CC. [Tina CC.]*, 77 AD3d 1056, 1057 [2010], *lv denied* 16 NY3d 702 [2011]; *see Matter of Dylan R. [Jeremy T.]*, 137 AD3d 1492, 1494 [2016], *lv denied* 27 NY3d 912 [2016]). When we view the record as a whole, and exercise our own factual review power, we find that petitioner tendered sufficient independent proof to corroborate the son's out-of-court statements relating to neglect (*see Matter of Joshua UU. [Jessica XX.—Eugene LL.]*, 81 AD3d 1096, 1098-1099 [2011]; *compare Matter of Douglas NN.*, 277 AD2d 749, 750 [2000]). The son's statements to a caseworker, who interviewed him, that the boyfriend hits him using his hands and feet "anywhere and wherever he wants to" and his statements to the other caseworker regarding domestic violence in the home were sufficiently corroborated by testimony from the boyfriend's other two children regarding their observations of physical abuse by the boyfriend and by the testimony of the second caseworker who observed multiple bruises on the son. The photographs of the son's bruises further corroborate his out-of-court statements (*see Matter of Aaliyah Q.*, 55 AD3d at 971). We find that, taken together, all

of this provides sufficient corroboration of the son's statements concerning domestic violence in the household and the physical harm by the boyfriend toward him and the mother (*see Matter of Joshua UU. [Jessica XX.—Eugene LL.]*, 81 AD3d at 1098-1099).

McCarthy, J.P., Garry, Rose and Aarons, JJ., concur. Ordered that the order is affirmed, without costs.