In the Matter of BIANCA QQ. and Another, Children Alleged to be Abused and/or Neglected. CLINTON COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; KIYONNA SS., Appellant. [903 NYS2d 819]—

Stein, J. Appeals from two orders of the Family Court of Clinton County (Lawliss, J.), entered July 2, 2009 and August 27, 2009, which, among other things, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate respondent's children to be neglected.

Respondent is the mother of Bianca QQ. (born in 2001) and Joseph RR. (born in 2003). Respondent and the children, accompanied by respondent's live-in paramour, moved from New Jersey to Clinton County in July 2008. During the ensuing school year, the children informed school officials that they were regularly beaten by both adults and that they were often left home alone. Following an investigation, petitioner commenced this abuse and neglect proceeding alleging, among other things, that respondent used excessive corporal punishment and failed to provide adequate supervision,[1] and the children were temporarily removed from respondent's care. After a fact-finding hearing, Family Court found the children to be neglected within the meaning of Family Ct Act § 1012, ordered their continued placement with petitioner and issued an order of protection against respondent.[2] Respondent appeals, arguing that Family Court's finding of neglect is not supported by a preponderance of the evidence. We disagree.

---

1. A separate petition was filed against respondent's paramour.

2. Respondent's motion to dismiss those portions of the petition alleging that she abused the children was granted by Family Court.

In order to support a finding of neglect, petitioner was required to demonstrate that the physical, mental or emotional condition of the children was impaired or in imminent danger of becoming impaired as a result of respondent's failure to exercise a minimum degree of care (see Family Ct Act § 1012 [f] [i]; *Nicholson v Scoppetta*, 3 NY3d 357, 368 [2004]). Preliminarily, we note that, although the children did not testify, their out-of-court statements were sufficiently corroborated by the sworn testimony of several witnesses or cross-corroborated by each other's recitation of the same events (see Family Ct Act § 1046 [a] [vi]; *Matter of Lindsey BB. [Ruth BB.]*, 70 AD3d 1205, 1206-1207 [2010]; *Matter of Ian H.*, 42 AD3d 701, 703 [2007], *lv denied* 9 NY3d 814 [2007]).

As to the allegations involving respondent's failure to provide proper supervision (see Family Ct Act § 1012 [f] [i] [B]), Bianca told her first-grade teacher that she often baby-sat for Joseph and prepared meals for both of them—including grilled cheese sandwiches—because they were frequently left home alone. In that regard, a teacher's assistant testified that, after school one January afternoon, she observed the two children standing outside the doorway of their home with their backpacks on. The children were still standing there when the assistant again passed by the home approximately an hour later. The next day, Bianca informed the assistant that she had lost her key and that the children had been waiting for an adult to come home and let them in. On another occasion, neither respondent nor her paramour arrived to pick up the children from school. School personnel contacted respondent, who requested that the children—then seven and five years old—be allowed to walk home alone, where a babysitter would purportedly meet them. A school employee escorted the children home, but, as there was no one present to care for them, they returned to school to wait for respondent, who eventually left work early to get them.

Witness testimony also substantiated the claims of both children that respondent administered regular "whoopings" to them with a belt—often striking them with the belt's metal buckle. Indeed, several witnesses testified that they observed bruising on Bianca's fingers and feet and scars on her back and knee. When questioned about the injuries, Bianca stated that they were the result of being struck with a belt. Similarly, a school psychologist noticed a bruise on Joseph's head that Joseph reported was caused by a belt. Moreover, both children informed school officials that they were instructed not to discuss what transpired in their home and were initially reluctant to do so because they were afraid of being punished. In fact, the rec-

ord reveals that the children lived in perpetual fear of a "whooping." A Child Protective Services caseworker testified that, immediately following the children's removal from their home, the children indicated that they did not want to be taken to petitioner's facility because respondent and her paramour knew where the building was located. The caseworker further testified that the children then declared "if they come here we'll get a beating."

In light of the foregoing, Family Court found that the children were in imminent danger of impairment due to respondent's failure to exercise a minimum degree of care. Notably, even a single incident of excessive corporal punishment can support a finding of neglect (*see Matter of Aaliyah Q.*, 55 AD3d 969, 970 [2008]) and actual physical injury or impairment of the child is not required. Moreover, while both respondent and her paramour testified that neither of them struck the children and had various explanations for the children's alleged bruises, Family Court gave no weight to the testimony of either witness. According due deference to Family Court's credibility determinations, we have no difficulty concluding that Family Court's finding of neglect is supported by a sound and substantial basis in the record (*see Matter of Christian EE.*, 33 AD3d 1106, 1106-1107 [2006]; *Matter of Collin H.*, 28 AD3d 806, 808-809 [2006]; *Matter of Danielle YY.*, 188 AD2d 894, 896 [1992], *lv denied* 81 NY2d 706 [1993]; *see generally Matter of Omavi A. [Jaimyce A.]*, 68 AD3d 1463, 1464-1465 [2009]).

Finally, the record reveals that respondent consented to Family Court's dispositional order. Accordingly, "[b]ecause no appeal lies from an order entered on consent" (*Matter of Mary UU. [Michael UU.—Marie VV.]*, 70 AD3d 1227, 1228 [2010]), respondent's appeal challenging such order must be dismissed (*see Matter of Fantasia Y.*, 45 AD3d 1215, 1216 [2007]; *Matter of Michael CC.*, 216 AD2d 740 [1995]).

Mercure, J.P., Malone Jr., Kavanagh and Garry, JJ., concur. Ordered that the order entered August 27, 2009 is affirmed, without costs. Ordered that the appeal from the order entered July 2, 2009 is dismissed, without costs.