*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  February 18, 2016                    518252
_____

In the Matter of DYLYNN V. and
    Another, Alleged to be
    Neglected Children.

SCHUYLER COUNTY DEPARTMENT OF
    SOCIAL SERVICES,                          MEMORANDUM AND ORDER
                    Respondent;

BRADLEY W.,
                    Appellant.
_____

Calendar Date:  January 11, 2016

Before:  McCarthy, J.P., Egan Jr., Lynch and Devine, JJ.

_____

        Francisco P. Berry, Ithaca, for appellant.

        Kristin E. Hazlitt, Schuyler County Department of Social
Services, Watkins Glen, for respondent.

        Daniel J. Fitzsimmons, Watkins Glen, attorney for the
children.

_____

Egan Jr., J.

        Appeal from an order of the Family Court of Schuyler County
(Morris, J.), entered December 18, 2013, which, among other
things, granted petitioner's application, in a proceeding
pursuant to Family Ct Act article 10, to adjudicate the subject
children to be neglected.

        In July 2013, petitioner investigated allegations of
neglect made against respondent by his stepson, Dylynn V. (born

in 1999), wherein Dylynn alleged that respondent physically abused him, his sister, Deborah V. (born in 2001), and their mother, to whom respondent then was married. The investigation was prompted by a telephone call that Dylynn, with the assistance of his maternal grandfather and the grandfather's wife,[1] had made to the Schuyler County Sheriff's Department and an interview of the child by a member of the State Police, during the course of which Dylynn revealed that he and his sister routinely were being hit by respondent and, further, described a specific incident in which respondent choked him while restraining him in a headlock on the floor. Following an investigation, petitioner commenced this neglect proceeding against respondent and obtained a temporary order of protection in favor of the children.[2] A fact-finding hearing ensued, at the conclusion of which Family Court found that respondent had neglected both Dylynn and Deborah and, further, that respondent had derivatively neglected Deborah. Following a dispositional hearing, at which it was revealed that Dylynn, Deborah and their mother had relocated out of state, Family Court issued an order of protection in favor of the children, which remained in effect until September 1, 2015. This appeal by respondent ensued.

We affirm. Preliminarily, although the combined dispositional order/order of protection expired by its own terms in September 2015, this appeal from Family Court's fact-finding order (see Family Ct Act § 1112 [a]) is not moot, as the finding of neglect and derivative neglect against respondent "may adversely affect [him] in future matters" (Matter of Kali-Ann E., 27 AD3d 796, 797 n [2006], lv denied 7 NY3d 704 [2006]). Additionally, to the extent that respondent's attorney suggested at oral argument that it was inappropriate for petitioner to continue to pursue this neglect proceeding against respondent once he and the children's mother separated, suffice it to say

---

[1]  Although the grandfather's wife is a step-grandparent to the subject children, for purposes of this decision, she will be referred to as the children's grandmother.

[2]  Petitioner also apparently filed a neglect petition against the mother, which thereafter was "settled."

that we find this argument to be entirely unpersuasive.  Simply put, a parent or other person legally responsible for a child's care cannot avoid the consequences of his or her prior actions by subsequently electing to vacate the premises or otherwise sever ties with the child's remaining parent.

Turning to the merits, "[a] finding of neglect will be sustained if [the] petitioner demonstrated, by a preponderance of the evidence, that the child[ren's] physical, mental or emotional condition was harmed or is in imminent danger of such harm as a result of the parent's [or caretaker's] failure to exercise [the] minimum degree of care that a reasonably prudent person would have used under the circumstances" (Matter of Marcus JJ. [Robin JJ.], 135 AD3d 1002, ___, 22 NYS3d 661, 662 [2016]; see Matter of Hailey XX. [Angel XX.], 127 AD3d 1266, 1268 [2015]; Matter of Alexander G. [Tatiana G.], 93 AD3d 904, 905 [2012]).  "Notably, a finding of neglect does not require actual injury or impairment, but only an imminent threat that such injury or impairment may result, which can be established through a single incident or circumstance" (Matter of Heaven H. [Linda H.], 121 AD3d 1199, 1199 [2014] [internal quotation marks, brackets and citations omitted]; see Matter of Emmett RR. [Scott RR.], 134 AD3d 1189, 1190-1191 [2015]).

Here, the grandparents, a Schuyler County Sheriff's Department deputy, a State Trooper and caseworkers from two local social services agencies testified that Dylynn — and, to a lesser extent, Deborah — alleged that respondent had physically abused them.  Although some of the statements made by the children — such as Dylynn's assertion that respondent "punched and hit" them "all of the time" wherever he could with both an opened hand and a closed fist — indeed were general in nature, Dylynn also described a specific incident to investigating personnel where respondent put him in a headlock and tried to choke him.  In this regard, "it is well settled that a child's out-of-court statement of abuse or neglect may be admitted in a Family Ct Act article 10 proceeding provided it is corroborated by any other evidence tending to support its reliability" (Matter of Kimberly Z. [Jason Z.], 88 AD3d 1181, 1182 [2011] [internal quotation marks, brackets and citations omitted]; see Family Ct Act § 1046 [a] [vi]; Matter of Branden P. [Corey P.], 90 AD3d 1186, 1188

[2011]).  While the mere repetition of an accusation by a child is insufficient to corroborate the child's prior account of abuse or neglect (see Matter of Cadence GG. [Lindsay II.], 124 AD3d 952, 953-954 [2015]; Matter of Kimberly CC. v Gerry CC., 86 AD3d 728, 730 [2011]), "[a] relatively low degree of corroborative evidence is sufficient to meet this threshold, and the reliability of the corroboration, as well as issues of credibility, are matters entrusted to the sound discretion of Family Court and will not be disturbed unless clearly unsupported by the record" (Matter of Kimberly Z. [Jason Z.], 88 AD3d at 1182 [internal quotation marks and citations omitted]; see Matter of Olivia C. [Scott E.], 97 AD3d 910, 912 [2012], lv denied 19 NY3d 814 [2012]).

Here, the children's grandmother testified as to an incident that occurred in January 2013 when respondent placed Dylynn in a headlock.[3]  Specifically, the grandmother testified that respondent and Dylynn were "hollering at" one another when respondent took a step toward the child, in response to which Dylynn "put his hands up to protect himself."  The grandmother went on to state, "[The] next thing I knew Dylynn was down on the floor with his feet and his hands behind [him]"; respondent had "[o]ne arm around [Dylynn's] neck" and the other arm around the child's body, and the grandmother heard respondent say that "he would end up killing [Dylynn] if [Dylynn] didn't shut up."  The incident ended after the children's mother "beat[] on [respondent's] back to get him off of Dylynn."  This incident also was witnessed by the children's grandfather, who stated that respondent "[held Dylynn] down on the floor beating on him."  When the children's mother intervened, respondent "hit her too . . . because [she] was interfering."

The children's grandfather also testified as to additional incidents that occurred within respondent's household, noting that "there was . . . a lot of abuse in the home" during the time that he and his wife were living there.  According to the

_____

    [3]  The grandparents lived with the children, their mother and respondent for approximately one month beginning in January 2013.

grandfather, respondent was particularly abusive toward Dylynn, stating, "When Dylynn opened his mouth or tried to talk, . . . he would get busted in the mouth or get thrown to the floor and told to keep his mouth shut."  The grandfather witnessed incidents such as this "about four times" during the month that he resided in respondent's household.  The grandfather also described a particular incident when respondent pinned Dylynn against a wall in the family's residence – holding the child near his upper chest and neck "so he couldn't move" – and "hitting on him and so forth."  Again, the incident ended when the children's mother intervened and told respondent to stop.  In addition to the foregoing, the grandfather also testified that respondent "disciplined [Deborah] quite a bit" by spanking her "[o]n the bottom end" in a manner that the grandfather deemed to be beyond what was "appropriate."

"A single incident of excessive corporal punishment may form the basis for a neglect finding" (Matter of Dawn M. [Michael M.], 134 AD3d 1197, 1197 [2015] [citation omitted]; see Matter of Benjamin VV. [Larry VV.], 92 AD3d 1107, 1108 [2012]; Matter of Steven M. [Stephvon O.], 88 AD3d 1099, 1101 [2011]) and, to our analysis, the grandparents' sworn testimony is more than sufficient to corroborate – at the very least – Dylynn's out-of-court statement regarding the "headlock" incident.  Accordingly, we find ample support for Family Court's finding of neglect as to Dylynn (see Matter of Dylan TT. [Kenneth UU.], 75 AD3d 783, 783-784 [2010]; Matter of Bianca QQ. [Kiyonna SS.], 75 AD3d 679, 680 [2010]).  As for Deborah, the child informed one of petitioner's caseworkers that respondent "hit all of them . . . typically . . . on the back, bottom and legs."  According to Deborah, although respondent "only ever used his hands" for hitting and spanking, he "had threatened to use a paddle or a belt."  Additionally, the child told the caseworker that respondent "hits hard" and that, when respondent did spank them, "he [would] hit them over and over again."  In our view, Deborah's statements were sufficiently corroborated by Dylynn's substantially similar allegations of physical abuse (see Matter of Dawn M. [Michael M.], 134 AD3d at 1198; Matter of Bianca QQ. [Kiyonna SS.], 75 AD3d at 680), as well as the grandfather's sworn testimony regarding the manner in and frequency with which respondent spanked Deborah, thereby supporting Family Court's finding of neglect as to her.  Finally,

as respondent's conduct with respect to Dylynn reflected "such an impaired level of parental judgment as to create a substantial risk of harm for any child in his care" (Matter of Dylan TT. [Kenneth UU.], 75 AD3d at 784 [internal quotation marks, brackets and citation omitted]; accord Matter of Joseph RR. [Lynn TT.], 86 AD3d 723, 725 [2011]), we find ample evidence to support Family Court's additional finding of derivative neglect as to Deborah. Respondent's remaining arguments, to the extent not specifically addressed, have been examined and found to be lacking in merit.

McCarthy, J.P., Lynch and Devine, JJ., concur.

ORDERED that the order is affirmed, without costs.

ENTER:

Robert D. Mayberger
Clerk of the Court