■ In the Matter of NATALEE M., Alleged to Be a Neglected-Child. BROOME COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; NATHAN M. et al., Appellants. [66 NYS3d 58]—

Egan Jr., J.P. Appeals from two orders of the Family Court of Broome County (Connerton, J.), entered September 13, 2016 and January 25, 2017, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate the subject child to be neglected.

Respondent Susan N. (hereinafter the mother) and respondent Nathan M. (hereinafter the father) are the parents of a child (born in 2016). In February 2016, the father discovered the mother unresponsive at their home in the Town of Conklin, Broome County. She was rushed to the hospital, where she was determined to be 31 weeks pregnant, and underwent an emergency cesarean section. After delivery, petitioner received a report concerning the mother, because she continued to deny having been pregnant and declined to sign a consent form for the child's medical care; this prompted the hospital to place the child in protective care.[1] The mother also tested positive for the presence of methamphetamine at the time of the child's birth.

---

1. The report was later determined to be indicated as against both respondents on the ground of inadequate guardianship due to their failure to provide a safe and adequate home for the child or, in the alternative, to develop a sufficient safety plan. The report was also indicated against the mother for drug and alcohol misuse.

The child remained in the neonatal intensive care unit (hereinafter NICU) after delivery and, in the interim, petitioner's caseworkers met with respondents and informed them that they would need to engage in certain services and an adequate safety plan would need to be devised prior to the child's discharge from the hospital in order to ensure that the child's home environment was safe and appropriate. Approximately one month later, with no safety plan yet in place, petitioner conducted an unannounced inspection of respondents' home and determined that, insofar as it was still in the process of undergoing extensive renovations, it was not a suitable home environment for the child. Accordingly, that same day, on respondents' consent, Family Court temporarily placed the child in the custody of petitioner (*see* Family Ct Act § 1021).[2]

Petitioner thereafter commenced this neglect proceeding, alleging, among other things, that the mother had neglected the subject child by abusing drugs during her pregnancy and that both respondents had otherwise failed to provide adequate guardianship for the child by, among other things, failing to make the necessary preparations for the child's care or provide a safe and adequate home for her to return to. Following a fact-finding hearing, Family Court Adjudged the child to have been neglected by respondents. An order of disposition was thereafter entered that, among other things, continued placement of the child in the care of the temporary custodians. Respondents now appeal.[3]

We affirm. The party seeking to establish neglect must establish, "by a preponderance of the evidence (*see* Family Ct Act § 1046 [b] [i]), first, that [the] child's physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired and second, that the actual or threatened harm to the child is a consequence of the failure of the parent or caretaker to exercise a minimum degree of care in providing the child with proper supervision or guardianship" (*Nicholson v Scoppetta*, 3 NY3d 357, 368 [2004]; *see* Family Ct Act § 1012 [f] [i] [A]). "When determining whether a parent or guardian has failed to exercise a minimum degree of care, the relevant inquiry is whether a reasonable and prudent parent would have so acted, or failed to act, under the circumstances"

---

**2.** Temporary custody of the child was subsequently transferred from petitioner to two individuals (hereinafter the temporary custodians), who, although not blood relatives of the mother, were considered by the mother to be parental figures.

**3.** Although both respondents appealed from the order of fact-finding, only the mother appealed from the order of disposition.

(*Matter of Jade F. [Ashley H.]*, 149 AD3d 1180, 1181 [2017] [internal quotation marks and citations omitted]). Family Court's factual findings and credibility determinations are afforded great weight and will not be disturbed so long as they are supported by a sound and substantial basis in the record (*see Matter of Emmanuel J. [Maximus L.]*, 149 AD3d 1292, 1294 [2017]).

With regard to the mother, we find that there was a sound and substantial basis in the record supporting Family Court's determination of neglect as against her. At the fact-finding hearing, petitioner presented the testimony of, among others, Kristen Beylo, a child protective worker, and Diane Wessell, a hospital social worker. Beylo and Wessell both interviewed the mother at the hospital two days after she gave birth to the child, and they testified that the mother initially denied having given birth to a child and refused to sign a consent form for emergency medical treatment for the child. Beylo testified that, upon questioning, the mother acknowledged having used methamphetamine during her pregnancy, including one or two weeks prior to giving birth to the child, and Wessell confirmed that the mother tested positive for the presence of methamphetamine at the time of the child's birth. Wessell testified that, in a subsequent meeting, the mother confirmed using drugs during her pregnancy and acknowledged that, despite learning that she was pregnant in late December 2015 or early January 2016, she failed to obtain any prenatal care and otherwise hid her pregnancy from her family. Wessell also indicated that a toxicology test indicated that the child also testified positive for the presence of methamphetamine at birth. Based upon the child's premature birth, low birth weight and the subsequent need for a protracted stay in the NICU, on the record before us, we find that Family Court "properly made the 'necessary causative connection to all the surrounding circumstances that may or may not produce impairment or imminent risk of impairment in [this] newborn child' " (*Matter of John QQ.*, 19 AD3d 754, 756 [2005], quoting *Matter of Nassau County Dept. of Social Servs. v Denise J.*, 87 NY2d 73, 79 [1995]; *see Matter of Chastity O.C. [Angie O.C.]*, 136 AD3d 407, 407-408 [2016]), and we find no ground to disturb Family Court's credibility determinations in this regard.

We likewise find that Family Court's determination that the subject child was neglected by the father is supported by a preponderance of the evidence. The crux of petitioner's neglect allegations against the father concern his failure to make adequate preparations for the child's care and to provide a safe

and adequate home for the child to return to.[4] Beylo testified that, at her initial meeting with respondents, they informed her that they were renovating their home, which had previously sustained flood damage. Beylo testified that nearly one month after the child had been born, and having been unable to access respondents' home on a prior visit, she conducted an unannounced site visit of the home and found it to be a "construction site." Beylo indicated that it was difficult to walk through the home as there were numerous construction tools, nails and buckets of plaster laying about the residence. Moreover, there was no sheetrock on the living room walls or throughout the upstairs, with the exception of the bathroom and bedroom, and there were two motorcycles parked in a rear room of the home. Beylo further observed containers of fuel on the counters and testified that a chemical and/or gas odor permeated the house.[5]

Even assuming, without deciding, that the mother hid her pregnancy from the father such that the child's birth was a surprise to him—testimony that Family Court found incredible—the father had an additional month while the child was in the NICU to either finish renovations to the home or obtain adequate alternate housing. While we are mindful that the father was cooperative with petitioner, indicated a willingness to engage in services and presented two alternate safety plans to Beylo providing that the child could temporarily reside with the maternal grandmother in Pennsylvania or the paternal grandmother, petitioner ultimately determined that neither of these safety plans was workable, and the record is devoid of any further effort by the father to procure alternate housing.[6] Moreover, the father's failure to appear on three different days during the course of the fact-finding hearing and the fact that he did not testify at the hearing warrants "the strongest infer-

---

**4.** Family Court indicated that the father admitted to prior drug use. We note, however, that the father did not testify at the fact-finding hearing and Beylo testified that the only reason the father was asked to undergo a substance abuse evaluation was because he continued to reside with the mother and, upon delivery of the child, she had tested positive for drugs. Beylo further testified that the father thereafter complied with her request to obtain a drug screening and that at no point in time did he test positive for drugs. It also appears that no follow-up treatment was recommended as a result of the father's substance abuse evaluation.

**5.** The father also indicated to Beylo that he had not yet obtained a certificate of occupancy for the home.

**6.** At the fact-finding hearing, Family Court sustained an objection by the father's counsel, which effectively precluded petitioner from eliciting any information from Beylo regarding why temporary placement of the child with the maternal grandmother in Pennsylvania was an unworkable safety plan.

ence against him" that the opposing evidence would allow (*Matter of Stevie R. [Arvin R.]*, 97 AD3d 906, 907 [2012]; *see Matter of Caitlyn U.*, 46 AD3d 1144, 1147 [2007]). Under the circumstances, therefore, we find no error in Family Court's finding of neglect against the father. Petitioner presented sufficient evidence establishing that the father "knew or should have known of circumstances which required action in order to avoid actual or potential impairment of the child" (*Matter of Alaina E.*, 33 AD3d 1084, 1086 [2006]), and, given that the father lived with the mother throughout her pregnancy, we find no basis to disturb Family Court's credibility findings or its determination that the father failed to exercise a minimum degree of care in failing to provide the child with a safe and adequate home (*cf. Matter of Stevie R. [Arvin R.]*, 97 AD3d at 907-908).

Turning to the mother's appeal of the order of disposition, the record establishes that the mother consented to the terms of disposition, effectively foregoing her opportunity to offer evidence or otherwise challenge the terms proposed therein. Accordingly, as it is well-settled that no appeal lies from an order entered upon consent, the mother's appeal from such order must be dismissed (*see Matter of Bianca QQ. [Kiyonna SS.]*, 75 AD3d 679, 681 [2010]; *Matter of Mary UU. [Michael UU.— Marie VV.]*, 70 AD3d 1227, 1228 [2010]; *Matter of Michael CC.*, 216 AD2d 740, 740 [1995]). To the extent that the mother contends that her consent to the order of disposition was not knowing, voluntary or intelligent, she should have pursued such a challenge by way of a motion to vacate said order (*see Matter of Fantasia Y.*, 45 AD3d 1215, 1216 [2007]).

Devine, Clark, Mulvey and Rumsey, JJ., concur. Ordered that the order entered September 13, 2016 is affirmed, without costs. Ordered that the appeal from the order entered January 25, 2017 is dismissed, without costs.