Matter of Johnathan Q. (James Q.) (2018 NY Slip Op 08214)





Matter of Johnathan Q. (James Q.)


2018 NY Slip Op 08214


Decided on November 29, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 29, 2018

525146

[*1]In the Matter of JOHNATHAN Q., Alleged to be a Neglected Child. BROOME COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; JAMES Q., Appellant, et al., Respondent.

Calendar Date: October 19, 2018

Before: Lynch, J.P., Clark, Mulvey, Rumsey and Pritzker, JJ.


Renee Albaugh, Hamden, for appellant.
Thomas Coulson, Broome County Department of Social Services, Binghamton, for Broome County Department of Social Services, respondent.
Palmer J. Pelella, Owego, attorney for child.



MEMORANDUM AND ORDER
Lynch, J.P.
Appeal from an order of the Family Court of Broome County (Pines, J.), entered June 9, 2017, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate the subject child to be neglected.
Respondent James Q. (hereinafter the father) and respondent Marybeth Q. (hereinafter the mother) are the parents of a child (born in 2013). In February 2016, petitioner filed a neglect petition against respondents alleging, among other things, that the mother had untreated mental health issues, the father misused marihuana, the home where they lived with the child was unsanitary, "extremely messy" and cluttered with various items and garbage and the child was unsupervised and left to wander outside alone. After a fact-finding hearing, Family Court adjudicated the child to be neglected. The father appeals.
"[A] party seeking to establish neglect must show, by a preponderance of the evidence, first, that a child's physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired and second, that the actual or threatened harm to the child is a consequence of the failure of the parent or caretaker to exercise a minimum degree of care in providing the child with proper supervision or guardianship" (Nicholson v Scoppetta, 3 NY3d 357, 368 [2004] [internal citation omitted]; see Family Ct Act § 1012 [f]; Matter of Alyssa OO. [Andrew PP.], 68 AD3d 1158, 1159 [2009]). A neglect adjudication may be warranted "when a parent knew or should have known of circumstances which required action in order to avoid actual or potential impairment of the child and failed to act accordingly" (Matter of Mary YY. [*2][Albert YY.], 108 AD3d 803, 804 [2013] [internal quotation marks and citations omitted], lv denied 21 NY3d 865 [2013]). In general, we defer to Family Court's credibility determinations and factual findings that are supported by a sound and substantial basis in the record (see Matter of Nathanael E. [Melodi F.], 160 AD3d 1075, 1076 [2018]; Matter of Marquise JJ. [Brithany JJ.], 103 AD3d 937, 938-939 [2013], lv denied 21 NY3d 859 [2013]).
At the fact-finding hearing, petitioner presented the testimony of three child protective caseworkers. Their testimony detailed regular visits to the home over a period of nearly two years. The caseworkers described the unsanitary, cluttered and dangerous conditions that they found and the corrective measures they recommended during each visit. One such visit was necessary because it was reported that the child — who was two years old at the time — was wandering outside of the house without respondents' knowledge. The father denied that the child was outside unsupervised, but conceded that it was possible because the child was able to get outside on his own. When, at a later visit, a caseworker discovered that the apartment door — located at the top of a steep stairway — was open, the mother explained that she left the door open so that the child could visit the neighbors, but that she "drew a line" at the top of the stairway that he knew not to cross. The mother explained to one caseworker that she was prescribed medication to treat certain mental illnesses but that she did not take it because the father smoked marihuana and she had to remain "sober."
The father does not specifically challenge the caseworkers' descriptions of the condition of the apartment. Rather, he argues that the child was found to be generally healthy and happy and the conditions were not significant enough to warrant the neglect adjudication. We disagree. "Actual injury or impairment [to the child] need not be demonstrated; rather, only an imminent threat that such injury or impairment may result is required" (Matter of Kieran XX. [Kayla ZZ.], 154 AD3d 1094, 1095 [2017] [internal quotation marks and citation omitted]; see Matter of Emmanuel J. [Maximus L.], 149 AD3d 1292, 1294 [2017]). When we defer to Family Court's credibility and factual findings and measure the father's conduct against what could be expected by a "reasonable and prudent parent faced with the same circumstances" (Matter of Zackery D. [Tosha E.], 129 AD3d 1121, 1122 [2015] [internal quotation marks and citation omitted]), evidence of his lax supervision, the continuing dirty and unsafe condition of the apartment, the mother's untreated mental illness, the father's disabling use of marihuana and the history of domestic violence amply supports Family Court's finding of neglect (see id. at 1122-1123; Matter of Hailey XX. [Angel XX.], 127 AD3d 1266, 1268-1269 [2015]; Matter of Draven I. v [Jenlyn I.], 86 AD3d 746, 747-748 [2011]).
The father's argument that petitioner failed to establish that he was aware of the conditions in his apartment is meritless. Because the father failed to testify at the fact-finding hearing, Family Court was entitled to draw the strongest allowable adverse inference against him (see Matter of Natalee M. [Nathan M.], 155 AD3d 1466, 1469-1470 [2017], lv denied 31 NY3d 904 [2018]; Matter of Heyden Y. [Miranda W.], 119 AD3d 1012, 1014 [2014]). The evidence was that the father was rarely in the apartment when the caseworkers visited, but he indisputably lived there with the mother and the child, shared responsibility for the conditions observed and was legally responsible for the child's care (see Family Ct Act § 1012 [a]). At the very least, it was established that the father "knew or should have known of circumstances which required action in order to avoid actual or potential impairment of the child" (Matter of Natalee M. [Nathan M.], 155 AD3d at 1470 [internal quotation marks and citation omitted]; see Matter of Zackery D. [Tosha E.], 129 AD3d at 1122).
Clark, Mulvey, Rumsey and Pritzker, JJ., concur.
ORDERED that the order is affirmed, without costs.