Matter of Kaelani KK. (Kenya LL.) (2022 NY Slip Op 00225)





Matter of Kaelani KK. (Kenya LL.)


2022 NY Slip Op 00225


Decided on January 13, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:January 13, 2022

531449
[*1]In the Matter of Kaelani KK., Alleged to be a Neglected Child. Schenectady County Department of Social Services, Respondent; Kenya LL., Appellant.

Calendar Date:December 16, 2021

Before:Garry, P.J., Lynch, Aarons and Reynolds Fitzgerald, JJ.

Alexandra G. Verrigni, Rexford, for appellant.
Christopher H. Gardner, County Attorney, Schenectady (Jennifer M. Barnes of counsel), for respondent.
Patricia Countryman, Schenectady, attorney for the child.



Lynch, J.
Appeal from an order of the Family Court of Schenectady County (Blanchfield, J.), entered March 11, 2020, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate the subject child to be neglected.
Respondent is the mother of the subject child (born in 2019). In March 2019, petitioner commenced this neglect proceeding against respondent alleging that she had brought the child outside in freezing weather for approximately 45 minutes without suitable clothing, resulting in the child being hospitalized with hypothermia. The petition further alleged that respondent left the hospital with the child against medical advice and that her untreated mental health diagnoses impaired her ability to safely care for the child.[FN1] The child was temporarily removed from respondent's care during the pendency of the proceeding and, following a fact-finding hearing, Family Court adjudged respondent to have neglected her. Respondent appeals.[FN2]
Contrary to respondent's contention, Family Court's neglect finding has a sound and substantial basis in the record. "To establish neglect, . . . petitioner bore the burden of proving, by a preponderance of the evidence, that the child[]'s 'physical, mental or emotional condition[] [was] impaired or [was] in imminent danger of becoming impaired as a result of [respondent's] failure . . . to exercise a minimum degree of care . . . in providing [the child] with proper supervision or guardianship'" (Matter of Cheyenne Q. [Charles Q.], 196 AD3d 747, 747-748 [2021], lv denied 37 NY3d 915 [2021], quoting Family Ct Act § 1012 [f] [i] [B]; see Nicholson v Scoppetta, 3 NY3d 357, 368-370 [2004]). In assessing whether respondent failed to exercise a minimum degree of care, the critical inquiry is "whether 'a reasonable and prudent parent [would] have so acted, or failed to act, under the circumstances'" (Matter of Afton C. [James C.], 17 NY3d 1, 9 [2011], quoting Nicholson v Scoppetta, 3 NY3d at 370; accord Matter of Cheyenne Q. [Charles Q.], 196 AD3d at 747-748). "Family Court's factual findings and credibility determinations are afforded great weight and will not be disturbed so long as they are supported by a sound and substantial basis in the record" (Matter of Natalee M. [Nathan M.], 155 AD3d 1466, 1468 [2017] [citation omitted], lv denied 31 NY3d 904 [2018]).
At the fact-finding hearing, petitioner presented evidence that, following a night of drinking, respondent and the child's father got into a verbal altercation in the early morning hours of March 5, 2019, prompting the father to leave the residence around 3:00 a.m. Respondent followed with the child, who was wearing a full-length onesie, and began walking outside. Given the extremely cold air temperature, two concerned citizens made reports to the State Central Registry of Child Abuse and Maltreatment and the police were summoned to investigate. Police officers encountered respondent and the father while they were [*2]still walking with the child, with one of the officers testifying that it was "very cold" outside and that the child was not dressed in suitable clothing. An ambulance was eventually called and the child was taken to Ellis Hospital, where she was found to have a below normal body temperature. Despite such finding, respondent discharged the child from the hospital — against medical advice — prior to the child's temperature reaching normal levels, claiming that she had "other things that [she] had to do." Although respondent told investigating caseworkers that she was only outside with the child for five minutes, the police report from the incident stated that she was outside with the child for approximately 45 minutes. In rebuttal, respondent called Jamila Ross — a family friend with whom she had lived for a month following the child's birth — to testify on her behalf. Ross testified that respondent has "a big heart" and that she trusts respondent with her own children. Ross also maintained that respondent was "[a]wesome" with the subject child and appropriately consoled, fed and bathed her.
Notwithstanding Ross' testimony that respondent appropriately cared for the child, a finding of neglect "'may be established through a single incident or circumstance,'" provided that actual or imminent harm to the child is shown (Matter of Jarrett SS. [Jade TT.-Scott SS.], 183 AD3d 1031, 1032 [2020], quoting Matter of Emmanuel J. [Maximus L.], 149 AD3d 1292, 1294 [2017]). Given the proof that respondent exposed the two-month-old child to extremely cold weather conditions without suitable clothing — resulting in the child's body temperature dropping to dangerous levels — and prematurely left the hospital with the child against medical advice, there is a sound and substantial basis in the record to sustain the neglect finding (see Matter of Alaysha E. [John R.E.], 94 AD3d 988, 989 [2012]; see generally Nicholson v Scoppetta, 3 NY3d at 370).[FN3]
Garry, P.J., Aarons and Reynolds Fitzgerald, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: Petitioner also commenced a neglect proceeding against the child's father, which is not the subject of this appeal.

Footnote 2: A dispositional hearing was held during the pendency of this appeal, which resulted in the entry of a dispositional order that kept the child in petitioner's custody and placed respondent under an order of supervision. Respondent has filed a notice of appeal from the dispositional order, which does not affect the appealability of the intermediate fact-finding order of neglect (see Family Ct Act § 1112 [a]; Matter of Jalicia G. [Jacqueline G.], 130 AD3d 402, 404 [2015]).

Footnote 3: There is a dispute as to whether respondent walked outside with the child for 45 minutes or whether the police kept her waiting for that amount of time during their questioning. No matter which version is correct, respondent's decision to take the child outside wearing only a onesie in extremely cold weather, coupled with her decision to discharge the child from the hospital against medical advice, amply supports the neglect finding.