Matter of Alexis TT. (Andrea VV.) (2022 NY Slip Op 02838)

Matter of Alexis TT. (Andrea VV.)

2022 NY Slip Op 02838

Decided on April 28, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 28, 2022

531503
[*1]In the Matter of Alexis TT. and Others, Alleged to be Neglected Children. Schoharie County Department of Social Services, Respondent; Andrea VV., Appellant.

Calendar Date:March 23, 2022

Before:Egan Jr., J.P., Clark, Pritzker, Ceresia and Fisher, JJ.

Harpremjeet Kaur, Cooperstown, for appellant.
Alexandra G. Verrigni, Rexford, attorney for the children.
Heather Corey-Mongue, Ballston Spa, attorney for the child.

Pritzker, J.
Appeal from an order of the Family Court of Schoharie County (Bartlett III, J.), entered May 6, 2020, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate the subject children to be neglected.
Respondent is the mother of two children (born in 2006 and 2009) who share the same father, Justin TT. (hereinafter the older children's father), and one child (born in 2013) whose father is Matthew UU. (hereinafter the youngest child's father). In June 2019, petitioner commenced this neglect proceeding contending that respondent "suffers from a mental illness, disturbance, disease or disability and as a consequence is unreliable, irrational, irresponsible and at times, an unsafe caretaker for [the] children." In particular, the petition alleged that, on March 30, 2019, respondent convinced the children to lie to the police regarding a domestic incident with the youngest child's father. The petition also alleged that, on May 15, 2019, respondent told the children that she was going to kill herself and the children witnessed respondent take a significant amount of medication while driving them in a vehicle. Following a fact-finding hearing, Family Court adjudged respondent to have neglected the children. Respondent appeals.
Contrary to respondent's contention, Family Court's neglect finding has a sound and substantial basis in the record. "To establish neglect, [the] petitioner [bears] the burden of proving, by a preponderance of the evidence, that the child[ren]'s physical, mental or emotional condition[s] [were] impaired or [were] in imminent danger of becoming impaired as a result of [the] respondent's failure to exercise a minimum degree of care in providing the child[ren] with proper supervision or guardianship" (Matter of Kaelani KK. [Kenya LL.], 201 AD3d 1155, 1155 [2022] [internal quotation marks, ellipses, brackets and citations omitted]; see Family Ct Act § 1012 [f] [i] [B]; Nicholson v Scoppetta, 3 NY3d 357, 368-370 [2004]). "In determining whether [the] respondent failed to exercise a minimum degree of care, the critical inquiry is whether a reasonable and prudent parent would have so acted, or failed to act, under the circumstances" (Matter of Cheyenne Q. [Charles Q.], 196 AD3d 747, 747-748 [2021] [internal quotation marks, brackets and citations omitted], lv denied 37 NY3d 915 [2021]; see Nicholson v Scoppetta, 3 NY3d at 370]). "Family Court's factual findings and credibility determinations are afforded great weight and will not be disturbed so long as they are supported by a sound and substantial basis in the record" (Matter of Natalee M. [Nathan M.], 155 AD3d 1466, 1468 [2017] [citation omitted], lv denied 31 NY3d 904 [2018]; accord Matter of Kaelani KK. [Kenya LL.], 201 AD3d at 1156).
At the fact-finding hearing, petitioner called the older children's father, the youngest child's father and petitioner's caseworker. Videos of the May 2019 incident were admitted into evidence [*2]through the fathers as well as the progress notes of petitioner's caseworker regarding his investigation, including his conversations with the children. The testimony and evidence largely focused on the May 2019 incident and revealed that, after a disagreement with the oldest child that morning about where respondent and the children were living, respondent, rather than bringing the children to school as planned, brought the children to their respective fathers. She contacted the older children's father to take the older children, and, when they met to facilitate the exchange, the older children ran to the father visibly upset and crying. Respondent stated that the older children were to stay with their father for a week and complained that she was going to be late for work. When she met the youngest child's father, respondent stated that she was "done with the kids." When the youngest child's father asked respondent what was going on, she replied that she could not "take anything anymore."
Testimony and video evidence offered by petitioner demonstrated that, while driving to meet the fathers, respondent was calling the oldest child names and was telling the children that she was going to kill herself and that she would not see the children anymore, which deeply upset the children. Notably, the video evidence depicts one of the older children becoming so upset while recounting the incident that she is barely able to catch her breath. Testimony established that two of the children were concerned that respondent overdosed on medication while driving them to their fathers, and respondent's behavior was described as "completely out of control." The older children's father testified that, prior to the May 2019 incident, respondent had a "history of saying things like 'I'm going to kill myself.'" He also testified that, in the months preceding this incident, he had become concerned for the older children, who informed him that they were in distress due to respondent's repeated moves and break-ups,[FN1] that the children suffered from nightmares and behavioral issues and that one of the children was experiencing issues with incontinence and was on medication for anxiety. He testified that these issues resolved once the older children lived with him after the May 2019 incident.
As to the March 2019 incident, the youngest child's father testified that he and respondent got into an argument that turned physical when respondent struck him in the presence of the children. The children were throwing things at the youngest child's father with respondent's encouragement and, when the oldest child came up to the youngest child's father and began hitting him with a brush, the youngest child's father took the brush and threw it on the floor, wherein it bounced up and hit the middle child's leg. He thereafter called 911 and heard respondent tell the children that they needed to tell the police that the youngest child's father was hitting respondent or she [*3]would go to jail. The youngest child's father admitted that he was charged with harassment in connection with this incident, but testified that he was acquitted of the charge. The caseworker's interviews with the children corroborated the testimony of the youngest child's father regarding the incident and revealed that respondent, after the incident, told the children not to say anything negative about respondent or she would lose them. The youngest child's father testified to suicide attempts by the mother prior to the March 2019 incident.
As to the May 2019 incident, respondent testified that she was bringing the children to school, which was a 15-minute drive, when she was suddenly in severe pain and she contacted the children's fathers because she thought she needed to go to the hospital. Rather than taking the children to school, she took them to their respective fathers. Respondent denied having told the children that she was going to kill herself, instead testifying that she was in a great deal of pain due to medical conditions and had said that she felt like dying because of the pain. Respondent testified that she took gabapentin, Tylenol, ibuprofen and CBD drops to help with the pain that she was experiencing, but denied driving in an unsafe manner. However, respondent was unsure whether she received medical attention that day or the next day, and she did not produce any proof of having received medical care. She later testified that, in fact, she went to the doctor within a week or two. Respondent denied making any of the statements depicted in the videos. As to the March 2019 incident, respondent testified that the youngest child's father was hitting her when one of the children hit him with a brush, which he took from her and threw at her, but it hit one of the other children. Respondent testified that the children were crying because of the incident and that her children were trying to protect her.
Given the foregoing, there is a sound and substantial basis to support a finding that respondent did not exercise the minimum degree of care in providing the children proper guardianship as she did not act as a reasonable and prudent parent would have (see Matter of Aiden LL. [Tonia C.], 191 AD3d 1213, 1214 [2021]; Matter of Josephine BB. [Rosetta BB.], 114 AD3d 1096, 1099-1100 [2014]). Indeed, as to the March 2019 incident, a reasonable and prudent parent would not encourage her children to commit acts of domestic violence and thereafter coach them to lie about it to police. Additionally, as to the May 2019 incident, a reasonable and prudent parent would not react to a disagreement with the oldest child by thereafter telling the children that she would kill herself, at the same time taking multiple medications while driving, and that it would be the child's fault. Although respondent argues there was no evidence that she spoke about suicide in front of the children, the video recordings, testimony of the fathers and interviews [*4]of the children clearly indicate that she did speak about killing herself in front of the children on May 15, 2019. Moreover, given the evidence that the children were experiencing anxiety due to respondent's behavior, and that they were visibly upset and scared when respondent threatened to commit suicide, petitioner established that the children faced imminent impairment to their physical, mental or emotional conditions as a result of respondent's actions (see generally Matter of Kaelani KK. [Kenya LL.], 201 AD3d at 1157; Matter of Cerise M. [Michael M.], 177 AD3d 743, 744-745 [2019]; Matter of Kevin M.H. [Kenneth H.], 76 AD3d 1015, 1016 [2010], lv denied 15 NY3d 715 [2010]). Accordingly, Family Court thus appropriately found respondent to have neglected the children.
Egan Jr., J.P., Clark, Ceresia and Fisher, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: The notes of petitioner's caseworker reflect that the oldest child explained that she frequently had anxiety attacks while staying with respondent because respondent had moved frequently and had entered into relationships with various men.