■ Montgomery County Society for the Prevention of Cruelty to Animals, Respondent, v Juliana Bennett-Blue, Individually and Doing Business as Blue Haven Farm, et al., Appellants. [681 NYS2d 106] —Spain, J. Appeal from an order of the Supreme Court (Best, J.), entered October 25, 1996 in Montgomery County, which, *inter alia*, awarded permanent custody of defendants' animals to plaintiff.

On May 18, 1994, plaintiff and the Fulton County Sheriff's Department responded to numerous complaints that defendant Juliana Bennett-Blue (hereinafter defendant) was confining animals on her premises and under her control in a cruel and inhumane manner. Plaintiff and the Sheriff's Department raided defendant's farm, located in the Town of Perth, Fulton County, and found 148 live animals and numerous decomposing animal bodies; many of the animals found alive were severely malnourished and approximately 34 animals had to be immediately destroyed. The Sheriff's Department seized the remaining animals and placed them in plaintiff's custody and defendant was charged, in violation of Agriculture and Markets Law §§ 353 and 356, with several misdemeanor counts of cruelty to animals.

Thereafter, in accordance with a plea agreement, defendant entered an *Alford* plea to a violation of Agriculture and

---

* The record evidence at the prior trial is almost identical to that before us now.

Markets Law § 369, interference with officers, and was sentenced to a period of probation. The terms of probation included, *inter alia,* monthly monitoring of defendant by licensed veterinarians for one year and, further, that the animals seized, except those adopted out to other families, would be returned to her. The plea and sentence agreement was reduced to writing and executed by defendant, her attorney, an Assistant District Attorney and the Town Justice; significantly, a representative of plaintiff's organization did not sign the agreement. Subsequently, plaintiff commenced this action pursuant to Agriculture and Markets Law § 373 seeking, *inter alia,* permanent custody of the seized animals. After a nonjury trial, Supreme Court granted plaintiff custody of the animals and confirmed placement in the animals' adoptive homes. Defendant appeals.

We affirm. Initially, we conclude that plaintiff had standing to bring this action. Pursuant to Agriculture and Markets Law § 373 (2), plaintiff is authorized to lawfully take into its possession an animal which has been "confined or kept in a crowded or unhealthy condition or in unhealthful or unsanitary surroundings or not properly cared for or without necessary sustenance, food or drink". Defendant's assertion that this statutory provision conveys a temporary remedy rather than a permanent remedy is unavailing; such an interpretation would severely limit plaintiff's stated objective of attempting to prevent cruelty to animals. Agriculture and Markets Law § 373 does not set forth any procedure for the return of animals. Conversely, Agriculture and Markets Law § 374 conveys authority upon any agent or officer of the American Society for the Prevention of Cruelty to Animals to humanely destroy any animal that has been abandoned and not properly cared for and further, Agriculture and Markets Law § 374 (2) conveys authority upon said agent or officer to humanely destroy an animal already in its lawful possession. We agree with Supreme Court that when Agriculture and Markets Law §§ 373 and 374 are read together, it is clear that plaintiff had standing to commence this type of action as well as the authority to seek permanent custody of the animals it seized from defendant, regardless of the criminal proceedings or the plea bargain (*see, County of Albany v American Socy. for Prevention of Cruelty to Animals,* 112 Misc 2d 829, 830).

Next, we reject defendant's contention that the disposition of the criminal proceeding served as res judicata for purposes of the instant proceeding. It is well settled that a person is not bound by a prior proceeding when that person was not a party

to the prior proceeding and did not have a fair opportunity to be heard on the issues (*see, Kaufman v Eli Lilly & Co.*, 65 NY2d 449, 455; *Gilberg v Barbieri*, 53 NY2d 285, 290-292; *Schwartz v Public Adm'r*, 24 NY2d 65, 69). It is also true that two different proceedings can be brought against a defendant—usually one being criminal and the other civil—without invoking and violating the doctrines of collateral estoppel, res judicata (*see generally, Nelson v Dufficy*, 104 AD2d 234, *lv denied* 64 NY2d 610) or double jeopardy (*see, Matter of Smith v County Ct.*, 224 AD2d 89, *lv denied* 89 NY2d 807). A subsequent civil proceeding will not constitute double jeopardy when the proceeding is remedial, rather than punitive, in nature (*see, id.*). Here, the record reveals that plaintiff had no part nor was involved in the criminal proceedings and there is no evidence whatsoever that plaintiff participated, or had any say, in the plea agreement between defendant and the District Attorney's office. Moreover, this action was not seeking punitive damages but rather was commenced for the prevention of cruelty and protection of the animals which had been abused at the hands of defendant.

Finally, upon our review of Supreme Court's findings of fact and the record as a whole, we find no reason to disturb its order. Plaintiff presented testimony from numerous members of the Sheriff's Department who were involved with the raid on defendant's farm; they described the conditions of defendant's home as unlivable, with a tremendous odor of urine and feces permeating the walls of the house. Decomposing animal carcasses were found and the live animals were thin, filthy and had obvious breathing problems. Furthermore, there was no food to be found and large pits on the farm were used to deposit dead animals. A volunteer who had helped defendant on her farm testified that she had to leave the farm because she could not tolerate seeing the animals without food, that the only water available to most of the animals was a frozen pond, that she had given the horses some, but not enough, hay but never had any grain to feed them, and that she did not observe the other animals ever being fed. Another volunteer testified that when she was on the farm in 1994 she saw approximately 29 cats and kittens in defendant's home and that the cats could not breathe and their eyes were crusted shut. Further testimony described the deplorable conditions of the property and the sickly conditions of the animals.

In response, defendant offered her own testimony and that of other witnesses; defendant flatly refuted the allegations and the other witnesses testified, *inter alia*, that food and water

were available to the animals, that the larger animals were routinely shod, and that the "sickly" appearance of some of the animals was simply because defendant accepted and cared for sick animals. Clearly, Supreme Court was presented with conflicting evidence and made a credibility determination in favor of plaintiff. In our view, Supreme Court was in the best position to assess the credibility of the witnesses and, given the deference that must be afforded its credibility determinations (*see, Hoover v Durkee*, 212 AD2d 839, 841; *Brooker v State of New York*, 206 AD2d 712), we find no reason to disturb them. Moreover, the record is replete with evidence that defendant neglected the animals by failing to provide food, water, proper shelter and proper medical supervision. Supreme Court's conclusion is supported by overwhelming evidence.

We have reviewed defendant's remaining claims and find them to be without merit.

Cardona, P. J., White, Carpinello and Graffeo, JJ., concur. Ordered that the order is affirmed, without costs.