■ In the Matter of State of New York, Appellant, for an Order Pursuant to Article 12 of the Navigation Law to Enter Real Property Commonly Known as 55 Main Street, Addison. Essex Property Management, LLC, Respondent. [59 NYS3d 624]—

Appeal from an order of the Supreme Court, Steuben County

(Joseph W. Latham, A.J.), entered January 4, 2016. The order denied the application of petitioner for authority to enter certain real property.

It is hereby ordered that the order so appealed from is unanimously reversed on the law without costs, the matter is converted to an action for declaratory judgment, and judgment is granted in favor of petitioner as follows:

It is adjudged and declared that Navigation Law article 12 permits petitioner to use retained agents and contractors operating under its direction for the purpose of entering and inspecting any property with suspected petroleum discharges and undertaking the removal of unregulated discharges of petroleum.

Memorandum: In November 2010, Environmental Products & Services of Vermont, Inc. (EPSV), issued a corrective action investigation report (EPSV report) to the New York State Department of Environmental Conservation (DEC) as part of a due diligence analysis for a 7-Eleven store located at 47 Main Street in Addison, New York (47 Main Street). The EPSV report revealed the presence of gasoline in the groundwater. As a result, the DEC hired a contractor, Empire Geo Services, Inc. (EGS), to investigate an adjacent parcel owned by the Addison Central School District (District). EGS produced its own report, which concluded that the District's property was not the source of the gasoline discharge. The DEC then notified respondent that its upgradient property at 55 Main Street was suspected as the source of the gasoline. The DEC asked respondent for access to the property to investigate and, possibly, to remediate the discharge. Respondent denied that it was responsible for any petroleum discharge and disavowed any knowledge of petroleum-related storage tanks on its property. Respondent then advised the DEC that it would permit the DEC's contractors to enter 55 Main Street if the DEC agreed to an access agreement containing numerous limiting conditions. The DEC found the access agreement to be unreasonable and filed an order to show cause requesting that respondent be directed to permit the DEC and/or its contractors to have access to 55 Main Street pursuant to its authority under the Oil Spill Act (see Navigation Law article 12). Supreme Court refused to sign the order, determining that, unlike the DEC itself, the DEC's contractors had no statutory right to enter the property under the Oil Spill Act, and that respondent's access agreement was a reasonable limitation upon the DEC's contractors. The DEC appeals, and we reverse.

At the outset, we note that the nature of the relief sought by

the DEC, i.e., the interpretation of a legislative act, is available by way of a declaratory judgment action (*see* CPLR 3001; *see also Matter of Oglesby v McKinney*, 28 AD3d 153, 158 [2006], *affd* 7 NY3d 561 [2006]; *Matter of Morgenthau v Erlbaum*, 59 NY2d 143, 147-148 [1983], *cert denied* 464 US 993 [1983]). The DEC, however, failed to commence a declaratory judgment action properly, instead filing only an order to show cause with supporting papers. We further note that " 'courts are empowered and indeed directed to convert a civil judicial proceeding not brought in the proper form into one which would be in proper form, rather than to grant a dismissal' " (*Hodges v Beattie*, 68 AD3d 1597, 1598 [2009]). Here, we conclude that "the problem [is] one of improper form only" (*Matter of First Natl. City Bank v City of N.Y. Fin. Admin.*, 36 NY2d 87, 94 [1975]). We therefore convert the matter to an action for declaratory relief and deem the order to show cause and supporting papers to be a summons and complaint, respectively, pursuant to CPLR 103 (c) (*see Matter of Miller v Lakeland Fire Dist.*, 31 AD3d 556, 557 [2006]; *Matter of Bart-Rich Enters., Inc. v Boyce-Canandaigua, Inc.*, 8 AD3d 1119, 1119 [2004]; *Fragoso v Romano*, 268 AD2d 457, 457 [2000]; *see also* CPLR 304 [a]).

Contrary to the position of respondent, we agree with the DEC that the appeal is not moot. The DEC sought to gain entry to respondent's property by and through its retained contractors pursuant to its authority granted under the Oil Spill Act, and respondent has sought to restrict that access. That controversy lies plainly before us, and our decision "carries immediate, practical consequences for the parties" (*Saratoga County Chamber of Commerce v Pataki*, 100 NY2d 801, 812 [2003], *cert denied* 540 US 1017 [2003]), regardless whether the DEC could have exercised its statutory authority without the use of retained contractors.

We further agree with the DEC that the Oil Spill Act authorizes it and its contractors or agents to enter suspected spill sites. Navigation Law § 178 provides, in pertinent part, that "[t]he department is hereby authorized *to enter and inspect any property or premises for the purpose of inspecting facilities and investigating either actual or suspected sources of discharges or violation of this article or any rule or regulation promulgated pursuant to this article. The department is further authorized to enter on property or premises in order to assist in the cleanup or removal of the discharge.*" Respondent relies on the fact that the statute defines "the department" as "the department of environmental conservation, unless

otherwise indicated" (§ 172 [7]), and respondent asserts that it is unnecessary to read other sections of the Oil Spill Act to ascertain the intent of the Legislature with respect to whether contractors are encompassed by the above definition. The court accepted respondent's analysis and statutory construction, but we do not.

"As a general principle of statutory construction, all sections of a law should be read together to determine its fair meaning" (*Matter of Village of Chestnut Ridge v Howard*, 92 NY2d 718, 722 [1999]) "and, where possible, [a court] should harmonize[ ] [all parts of a statute] with each other . . . and [give] effect and meaning . . . to the entire statute and every part and word thereof" (*Friedman v Connecticut Gen. Life Ins. Co.*, 9 NY3d 105, 115 [2007] [internal quotation marks omitted]; *see* McKinney's Cons Laws of NY, Book 1, Statutes §§ 98, 130). "The [L]egislature intend[ed] by the passage of [the Oil Spill Act] to exercise the powers of this [S]tate to . . . requir[e] prompt cleanup and removal of" discharges of petroleum (Navigation Law § 170). Indeed, the Oil Spill Act's stated legislative purpose is to "prevent[ ] the unregulated discharge of petroleum which may result in damage to lands, waters or natural resources of the [S]tate by authorizing the [DEC] *to respond quickly* to such discharges and effect *prompt cleanup and removal* of such discharges, *giving first priority* to minimizing environmental damage" (§ 171 [emphasis added]). In order to effectuate those objectives, the Oil Spill Act expressly prohibits any "discharge of petroleum" (§ 173 [1]) that is not "in compliance with the conditions of a state or federal permit" (§ 173 [3]; *see* § 172 [8]). Where an unregulated discharge takes place, however, the "person" responsible "shall immediately undertake to contain such discharge" (§ 176 [1]). As this does not always occur, "the [DEC] may undertake the removal of such discharge and may *retain agents and contractors who shall operate under the direction of [the DEC] for such purposes*" (*id.* [emphasis added]; *see* § 176 [2] [a]). Giving the Oil Spill Act a liberal construction (*see* § 195; *State of New York v Green*, 96 NY2d 403, 406 [2001]; *Henning v Rando Mach. Corp.*, 207 AD2d 106, 110 [1994]), and in reading the act's sections together to best effectuate the Legislature's intended objectives (*see Friedman*, 9 NY3d at 115; *Village of Chestnut Ridge*, 92 NY2d at 722), we conclude that the DEC's contractors who "operate under the direction of [the DEC]" to investigate and remediate suspected and actual discharges of petroleum are authorized by statute, like the DEC, to enter the subject property for such purposes without acceding to landowner access agreements, but remaining subject only to restrictions imposed by law.

The parties' remaining contentions are without merit or are academic in light of our determination. Present—Whalen, P.J., Lindley, DeJoseph, NeMoyer and Curran, JJ.