Berger v A.S.P.C.A. (2024 NY Slip Op 51621(U))

[*1]

Berger v A.S.P.C.A.

2024 NY Slip Op 51621(U)

Decided on November 29, 2024

Supreme Court, Kings County

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on November 29, 2024
Supreme Court, Kings County

Barbara Berger, Plaintiff,

against
A.S.P.C.A., Defendant.

Index No. 725/2024

Barbara Berger, Brooklyn, plaintiff pro se.
Justin Thompson, New York City, for defendant.

Aaron D. Maslow, J.

Papers used on this motion: order to show cause, verified petition, verification, affidavit of emergency, Part 130 certification (two versions), RJI-replevin, RJI-poor person order, affidavit in support of notification, Chewy orders, receipt from Call Ahead Veterinary, affidavit of service, interim order, petitioner's exhibit 1 (Chewy orders), respondent's exhibit A (search warrant), respondent's exhibit B (veterinary statement).[FN1]

Upon the foregoing papers, having heard oral argument of the parties and petitioner's testimony, and due deliberation having been had, the within motion is determined as follows.
This matter was commenced by petitioner pro se by way of an order to show cause and verified petition, seeking the return of seven cats in a "replevin action" (order to show cause). In her verified petition, petitioner alleged, "Replevin order[,] return of my pets, seven cats[,] American Society for the Prevention of Cruelty for Animal won't return to me" (verified petition).
"All civil judicial proceedings shall be prosecuted in the form of an action, except where prosecution in the form of a special proceeding is authorized" (CPLR 103). "An action is [*2]commenced by filing a summons and complaint or summons with notice. . . . A special proceeding is commenced by filing a petition. . . ." (Id. 304 [a]; see id. 402.) While a petition in a special proceeding is accompanied by a notice of petition (see id. 403 [a]), "[t]he court may grant an order to show cause to be served, in lieu of a notice of petition. . ." (id. 403 [b]).
Replevin is an action at law (see Boyle v Kelley, 42 NY2d 88 [1977]). Therefore this matter should have been commenced by filing a summons and complaint or summons with notice — not by way of an order to show cause and petition. There is no special proceeding for replevin. Therefore, since this matter was commenced by way of an order to show cause and petition, it was not properly commenced. In essence, what petitioner has done is improperly commence a special proceeding for replevin.
It is true that "At any stage of an action, including the filing of a summons with notice, summons and complaint or petition to commence an action, the court may permit a mistake, omission, defect or irregularity, including the failure to purchase or acquire an index number or other mistake in the filing process, to be corrected, upon such terms as may be just, or, if a substantial right of a party is not prejudiced, the mistake, omission, defect or irregularity shall be disregarded, provided that any applicable fees shall be paid" (CPLR 2001).
It is also provided that "If a court has obtained jurisdiction over the parties, a civil judicial proceeding shall not be dismissed solely because it is not brought in the proper form, but the court shall make whatever order is required for its proper prosecution" (id. 103 [c]).
The Court does not view the provisions in CPLR 2001 and 103 (c) as mandating that any time there is a mistake in the manner a dispute is brought to court there is an automatic right of correction. The Court discerns this from another sentence in CPLR 103 (c) which follows the one quoted in the preceding paragraph: "If the court finds it appropriate in the interests of justice, it may convert a motion into a special proceeding, or vice-versa, upon such terms as may be just, including the payment of fees and costs" (id. 103 [c]). From the phrases "if a substantial right of a party is not prejudiced" (id. 2001) and "appropriate in the interests of justice" (id. 103 [c]), it is deduced that a mistake in commencing a matter in court should be excused only under circumstances where there is a potentially meritorious cause of action. If manifestly there is none, it serves no purpose to permit the matter to continue its way along the litigation path under the rubric of the proper commencing documents; to do so would waste valuable judicial resources as well as the adversary's time.
It is also noted that in Town of Cicero v Lakeshore Estates, LLC (152 AD3d 1168 [4th Dept 2017] [application for injunction improper outside context of action]), the Appellate Division held that an order to show cause and supporting papers could not be converted into a summons and complaint (see also Camp Scatico v Columbia County Dept. of Health, 277 AD2d 773 [3d Dept 2000] [order to show cause to bar respondent from investigating camp conditions improper outside of pending action]; Colonial Penn Ins. Co. v D'Aguilar, 151 AD2d 716 [2d Dept 1989] [conversion of proceeding for judicial review of arbitration to court action for de novo adjudication of No-Fault insurance dispute inappropriate; language of notice of petition and petition overwhelmingly demonstrated that plaintiff elected to commence proceeding to vacate arbitration award]; but see Matter of State of New York [Essex Prop. Mgt., LLC], 152 AD3d 1169, 1171 [4th Dept 2017] [order to show cause and supporting papers converted to summons and complaint for declaratory relief]; Hodges v Beattie, 68 AD3d 1597 [2d Dept 2009] [order to show cause and supporting papers converted to summons and complaint for adverse possession]).
The matter at bar is not one where " 'the problem [is] one of improper form only' (Matter of First Natl. City Bank v City of NY Fin. Admin., 36 NY2d 87, 94 [1975])" (Matter of State of New York [Essex Prop. Mgt., LLC], 152 AD3d 1169, 1171 [4th Dept 2017]). The true facts of the dispute at issue came out during the hearing on petitioner's order to show cause. Respondent ASPCA's attorney submitted a search warrant evidencing that on July 22, 2024, fourteen cats [FN2]
were removed from petitioner's premises with her consent and brought to the ASPCA Hospital, located at 424 East 92nd Street, New York, NY, for medical evaluation. "Medical evaluation uncovered multiple medical conditions related to lack of adequate basic care and an inappropriate living environment causing the cats to have infectious diseases, upper respiratory infections, parasites, to be emaciated, and all requiring ongoing medical care" (Resp. Exh. A). "There is reasonable cause to believe there may be evidence of the commission of the crimes of Animal Cruelty, as defined in the Agricultural [sic] and Markets Law, §§ 350, 353 and other related charges. . ." (id.).
Respondent ASPCA submitted a Veterinary Statement dated August 6, 2024. The Assessment component stated:
Overall, this is an extremely unhealthy population of cats. All the cats had abnormal physical examination findings and experienced pain and discomfort due to various medical conditions identified in the population. These abnormalities included infectious diseases (respiratory and parasitic infections), flea infestation, varying degrees of dental disease, ear infections, diarrhea, dehydration, and dirty, foul-smelling hair coats.
All the medical conditions identified in this population of cats resulted from lack of adequate care (veterinary and husbandry) and an unsanitary environment. There was no indication that that the animals received medical care for their ailments or preventative medical care, such as spay/neuter services and adequate vaccinations, to maintain their overall health and well-being.
Three cars required hospitalization to stabilize their medical conditions. All the cats will require medications to treat their various medical conditions and infections.
It is indicated in the reported history that there were previously many more cats living in the household and a large percent of them recently died. The medical issues, particularly those related to infectious disease, identified in this population of cats likely contributed to these deaths. (Resp Exh. B at 1.)
Respondent ASPCA's attorney stated to the Court that he anticipated that petitioner would be arrested on animal cruelty charges as described in the search warrant. The cats were now evidence in the custody of Respondent and could not be presently returned. The procedure delineated in Agriculture and Markets Law § 373 concerning posting security for the care and upkeep of the cats would have to be followed.
Petitioner testified that she could not afford veterinary care due to it being so expensive. Taking the cats for free or low-cost veterinary care was difficult due to the locations of facilities which provided such services, and once she got there the lines were out the door. The cats were breeding because she had no money to neuter and spay them. Petitioner loved and fed the cats but was too poor. She was on disability income. She sold soda cans in order to raise money for the cats. Petitioner was hoping that at least Stinky, Frankie, and Ellie could be returned to her.
The Court notes that the Veterinary Statement (Resp. Exh. B) contained medical findings regarding nine live cats and one dead one. They paint a sad picture of the cats' diseased conditions. Reviewing the condition of just one of the cats, identified at the hearing by Petitioner as Stinky [FN3]
, the report described her as being five-to-ten years old, with the following conditions:
• Dehydration
• Dirty, flakey, matted, foul-smelling hair coat, feces in hair coat
• Fleas/flea feces
• Severe dental disease
• Ear infection/inflammation
• Itchy ears
• Diarrhea
• + Tapeworm, + Tritrichomonas
Pain and discomfort from dehydration, dental disease, flea infestation, ear disease, and hair coat changes
The Court recognizes that pro se litigants might not be familiar with legal procedures (e.g., Brown v Lavine, 45 AD2d 753 [2d Dept 1974]), and that certain latitude may be afforded (e.g. Haverlin v Gottlieb, 49 Misc 3d 131[A], 2015 NY Slip Op 51750[U] [App Term, 9th & 10th Dists. 2015] [motion providently construed as one to renew]; Bank Trust Natl. Assn. v Dubrowski, 2024 WL 3312482 [Sup Ct, NY County 2024] [court will examine claim under uncited provision as well as cited one]; Matter of J.E.P. v People, 9 Misc 3d 1104[A], 2005 NY Slip Op 51397[U] [Fam Ct, Nassau County 2005] [incorrect caption and minor technical deficiencies in papers excused]).
Even so, "A self-represented litigant acquires no greater rights than any other litigant (see Duffen v. State, 245 AD2d 653, 665 N.Y.S.2d 978; Brooks v. Inn at Saratoga Assn., 188 AD2d 921, 591 N.Y.S.2d 625)" (Greenfield v Gluck, 2003 WL 1961333 [App Term 2d & 11th Dists 2003] [untimely summary judgment motion]).[FN4]
As applied here, that means that plaintiff is [*3]required to comply with CPLR provisions for commencing an action for replevin.
Where a motion fails to meet the standards of CPLR 2214 (a), even when made by a pro se litigant, it must be denied (see Abizadeh v Abizadeh, 159 AD3d 856 [2d Dept 2018] [failure to sufficiently specify relief sought, against whom it was sought, and grounds therefor]; Renaud v Renaud, 79 Misc 3d 1237[A], 2023 NY Slip Op 50824[U] [Sup Ct, Kings County 2023] [order to show cause seeking restraint on sale of property with no affirmation of support or annexed exhibits]). Similarly, here there was a failure to properly commence an action with a summons and complaint or summons with notice. This is compounded by there being no meritorious case for the return of petitioner's cats at present. Replevin is not an appropriate remedy for the return of seized property [FN5]
when it would interfere with a pending criminal prosecution (see SSC Corp. v State of NY Organized Crime Task Force, 128 AD2d 860 [2d Dept 1987], citing Matter of B.T. Prods. v Barr, 44 NY2d 226, 233 n 2 [1978] ["in the typical case replevin would not be an appropriate remedy since it would constitute an unjustified and unacceptable interference with a pending or potential criminal prosecution"]).
Additionally, the proper course of procedure for the disposition of the cats lies within the mechanism prescribed by Agriculture and Markets Law § 373, which would include a determination of the underlying charges. The Commentary to this statutory provision notes as follows:
Disposition by Owner Return
An owner may have the animals returned to him or her through a successful action for replevin (see, e.g., Gonzalez, 128 AD3d 1331), the acquittal or dismissal of criminal charges that were the basis of the seizure (see, e.g., Putnam County Humane Soc. v. Nelson, 67 AD3d 763 (2d Dept. 2009)), or even the lack of practical or legal alternatives (see, e.g., County of Albany, 112 Misc 2d 829).
In the event of an acquittal or dismissal of criminal charges, the owner is not only given back the animals that were the subject of the offense, but, if he or she had duly posted a security for their care by an impounding organization, in accordance with the provisions of 373(6), the owner is further entitled to "a full refund of the security, including reimbursement by the impounding organization of any amount allowed by the court to be expended." See NY Agric. & Mkts. L. § 373(6)(c) (any person who posted the security, not just the owner, is entitled to such refund); see also id. § 376. The court must issue the order for refund "within a reasonable time from the acquittal or dismissal of [*4]charges." Id. § 373(6)(c).
Disposition by Judicial Order after Conviction
Upon conviction for a violation of sections 351, 353, 353-a, 353-b, 355, 356, 359, 360, 361, 365, or 368 of the Agriculture and Markets Law, the court may hold a hearing to determine whether the animal or animals which were the "basis of the conviction" should be forfeited to a SPCA or humane society (note that it is any society, not necessarily the impounding organization). See id. § 374(8)(a). It is, essentially, a sentencing hearing. If the court orders forfeiture as a component of sentence, the designated SPCA or humane society obtains all rights to the animal(s). Id. In its discretion, the court could elect not to order forfeiture, in which case the animals would presumably be returned to the owner, absent a successful ancillary civil action. See Bennett-Blue, 255 AD2d 705; Passmore, 2001 WL 1155012. (Jed L. Painter, Prac Commentaries, McKinney's Cons Laws of NY, Agriculture and Markets Law § 373, Disposition Mechanisms.)
This matter is not one where the petitioner's problem is one of improper form only — petitioner commencing an action for replevin via an order to show cause and petition instead of a summons and complaint or summons with notice. Rather, petitioner lacks a meritorious cause of action for return of the seized cats at this point inasmuch as they are evidence in a potential case of animal cruelty [FN6]
. Therefore, the Court declines to convert the filed papers into a summons and complaint.
Accordingly, it is hereby ORDERED that the petition is DENIED and the special proceeding is dismissed. This disposition is issued without prejudice to petitioner pursuing any available remedies to recover possession of her cats in accordance with proper legal procedures and under circumstances allowed by law.

Footnotes
Footnote 1:Respondent ASPCA did not submit formal papers in opposition prior to the hearing. Its attorney appeared at the hearing — a last-minute substitution for the attorney who otherwise would have appeared — to explain the circumstances under which petitioner's cats were seized. The Court deems respondent's exhibits to constitute the written opposition.
Footnote 2:While petitioner wrote in her papers that seven cats were involved, the search warrant recorded the number of cats medically evaluated to be 14. From the Veterinary Statement (Resp. Exh. B), it appears that on July 22, 2024, seven live cats and one dead one were brought from petitioner's residence; two additional ones were brought on July 24, 2024; and another cat named "Mother" had been brought to the Veterinary Emergency and Referral Group at 196 4th Avenue, in Brooklyn, on July 21, 2024. At the hearing, respondent's attorney conceded it was possible that the number of cats might have increased to 14 due to a female giving birth. The Veterinary Statement indicates that the cat named by respondent as Spider gave birth on July 26, 2024 to three kittens (one live, one stillborn, and one postnatal death) (see Resp. Exh. B at 8). Thus, the total number of cats taken from petitioner's possession plus descendants is indeed 14.

Footnote 3:At the ASPCA, if the names of seized animals are known, those names are used, according to respondent's attorney. Otherwise, the ASPCA assigns names. In this instance, names of insects and other small creatures were used to indicate that the cats derived from the same seizure. The dead cat was named Mantis. The lives ones were named Snail, Dragonfly, Bumblebee, Spider, Inch Worm, Grub, Weevil, Beetle, and Grasshopper. Inch Worm was the cat petitioner identified as her Stinky.
Footnote 4:The frustrations of according pro se litigants due consideration of their positions was discussed in Chrysler Credit Corp. v Smith (157 Misc 2d 56 [Civ Ct, Kings County 1993]).
 This Court has previously observed, "Apparently, since "the Kings County Court Help Center is prohibited by law from giving legal advice and can not complete forms on your behalf" (https://ww2.nycourts.gov/courts/2jd/kings/civil/helpcenter.shtml
 [last accessed Sept. 14, 2024]), pro se plaintiffs are bypassing the CPLR's requirements concerning how to commence actions" (Park v DeJonge, 83 Misc 3d 1293[A], 2024 NY Slip Op 51274, *1 [Sup Ct, Kings County 2024]). The prohibition against giving legal advice is also resulting in pro se litigants filling in blanks on template motion forms without complying with CPLR requirements.
 The Court also observed recently:

 This court has seen pro se lawsuits filed which clearly lacked merit. On the other hand, there have been those where a pro se litigant appears to have a dispute capable of being litigated but for the inability to comply with procedural requirements. Examples would be where disputes require a summons and complaint or summons with notice and the usual litigation process of discovery, ultimately leading to the filing of a note of issue and placement on the trial calendar. These types of cases will take years winding their way to a trial. Instead, these litigants are filing template motions, usually by order to show cause, without the predicate of a summons and complaint or summons with notice. These litigants do not understand that they simply cannot present their cause to the court and obtain an instant determination. Even a motion for preliminary relief, such as an injunction in many instances, still necessitates a summons and complaint or summons with notice.

. . .

 This court hopes that somewhere in the process, pro se litigants can be advised of certain fundamental procedural requirements without the court system breaching ethical proscriptions. This would include, informing a pro se litigant whether a dispute is one which can be properly adjudicated in a special proceeding or in an action, the latter requiring a summons and complaint or summons with notice. (Matter of Lobban v New York State Dept. of Health Vital Records, — Misc 3d —[A], 2024 NY Slip Op 51606[U], *7-8 [Sup Ct, Kings County 2024]).
The Court also wrote:
 The CPLR was amended to provide for limited scope appearances (see CPLR 321 [d]), but such an appearance contemplates assistance provided to a party during an aspect of litigation. It would benefit pro se parties if they had such assistance. However, in the absence of a formal limited scope appearance, what pro se parties need is legal assistance in choosing which available template forms should be used, completing them with sufficient information, and apprising them of the anticipated course of the litigation being undertaken. Perhaps the Rules of Professional Conduct and governing statutes could be amended so that at the Help Center such legal assistance could be provided by volunteer attorneys or third-year law students without any potential liability for claimed malpractice. (Id. *8 n 5.)
 Footnote 5:While the word "property" is used because the cited case law involved inanimate possessions, this Court has held that pets are not mere property, and custody of them must be determined on a "best for all concerned" analysis (see Connolly v Nina, 84 Misc 3d 1212[A], 2024 NY Slip Op 51422[U] [Sup Ct, Kings County 2024]). Applying that analysis to the case at bar, the Court would find that, based on the conditions under which the cats were maintained, the cats should not be returned her pending the determination of any proffered charges and, even then, seven cats (the number she listed in her papers) is too many.

Footnote 6:From what this Court has been presented with, it perceives no intended cruelty on the part of petitioner. It is clear that she takes pity on stray cats, brings them into her apartment, and tries the best that she can, under the circumstances of her limited resources, to care for them. Unfortunately, petitioner took in so many that she became overwhelmed. The intermingling of so many stray cats was bound to result in the spread of infectious diseases. Hopefully, any further actions taken in connection with petitioner's situation are resolved expeditiously. Going forward, if she is permitted to retain cats she should consider caring only for one or two neutered/spayed ones. At the hearing she did inform the Court that Stinky was her favorite so perhaps she could keep Stinky and another one so they would have each other's company.