545 Warren St. Hous. Dev. Fund Corp. v New York State Div. of Hous. & Community Renewal (2026 NY Slip Op 26020)

[*1]

545 Warren St. Hous. Dev. Fund Corp. v New York State Div. of Hous. & Community Renewal

2026 NY Slip Op 26020

Decided on February 7, 2026

Supreme Court, Kings County

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on February 7, 2026
Supreme Court, Kings County

545 Warren Street Housing Development Fund Corporation, Plaintiff,

againstNew York State Division of Housing and Community Renewal, HOUSING TRUST FUND CORPORATION and RUTHANNE VISNAUSKAS, as Commissioner of the New York State Division of Housing and Community Renewal, Defendants.

Index No. 530007/2025

Anderson Law, New York City (Gregory Byrnes of counsel), for plaintiff.Letitia James, Attorney General, New York City (Michael A. Berg of counsel), for defendants.

Aaron D. Maslow, J.

The following numbered papers were used in this special proceeding: NYSCEF Document Nos. 1-60.
Upon the foregoing papers, having heard oral argument[FN1], and due deliberation having been had, the within matter is determined as hereinafter set forth.
This matter was commenced as an Article 78 special proceeding to review a government agency determination.BackgroundPlaintiff[FN2] owns and operates an eleven-unit cooperative apartment building at 545 Warren Street, Brooklyn, New York 11217 (the "Building"). The Building was developed with $836,128 in interest-free federal loans through the U.S. Department of Housing and Urban Development's HOME Investment Partnerships Program (the "HOME Program"), designed to provide low-income persons with affordable housing they can own or rent. The HOME Program is administered in the State of New York by the Housing Trust Fund Corporation ("HTFC") through the State Division of Housing and Community Renewal ("DHCR"). The Defendants herein are DHCR, DHCR Commissioner RuthAnne Visnauskas, in her official capacity, and HTFC.
As a condition of financing under the HOME Program, Plaintiff, by an assignment from its predecessor in interest, dated October 4, 2002, committed to operate the Building as affordable housing in the form of a shareholder-owned cooperative building for a period of 30 years, from 2002 to 2032 (the "Affordability Period"). For the duration of the Affordability Period, ten of the eleven apartments in the Building are reserved for qualified low-income owner-occupants, and are subject to resale restrictions set forth in federal law and regulations.
These limitations and, crucially, their 30-year duration, are set forth in several documents, annexed to the pleadings, whose authenticity was not challenged. These include a Regulatory Agreement executed by Plaintiff's predecessor and HTFC on September 15, 2000; the General Project Description; a Cooperative Offering Plan dated July 3, 2022; and the Proprietary Lease between Plaintiff and each shareholder-tenant (see NYSCEF Doc Nos. 18, Hair aff, ¶¶ 30-33; 20, Regulatory Agreement and General Project Description; 22, Cooperative Offering Plan; 23, Proprietary Lease).
On September 2, 2025, Plaintiff commenced this Article 78 proceeding, seeking to terminate the Affordability Period with seven years remaining (see NYSCEF No. 1, verified petition). The petition alleges that under the controlling federal regulation, the Affordability Period was fifteen years, from on or about October 4, 2002 to on or about October 4, 2017 (see id. ¶¶ 2-3). On that basis, the petition seeks a declaratory judgment that, inter alia, the restrictions ended in 2017, and that Defendants have no authority over the resale of units in the Building (see id. ¶¶ 28-59). The precipitating incident for Plaintiff seeking relief is that one or more shareholders in Plaintiff wish to sell their shares (in effect, their apartments) on the open market; a shareholder initiated an inquiry concerning this in 2025. Among the reasons is that real property taxes have increased excessively; being able to sell on the open market would enable shareholders to recoup their purchase costs, have sufficient funds to live in a location with lower operating costs, and retain some funds.
Defendants cross-move to dismiss the proceeding on the grounds that it is barred by the applicable statute of limitations; the petition does not assert a claim under Article 78 of the CPLR; and Plaintiff has failed to demonstrate that the Affordability Period has expired. The limitations on re-selling the cooperative building shares should remain in effect until 2032, maintain Defendants.

Statute of Limitations and Procedural Issues
Defendants argue that since the petition alleges that Defendants improperly asserted regulatory authority over the Building after the alleged termination of the Affordability Period on October 4, 2017, the statute of limitations expired. Article 78 special proceedings are subject to a four-month statute of limitations (see CPLR 217 [1]). Alternatively, construing the petition as attempting to bring an action for declaratory relief under CPLR 3001, it is still untimely, maintain Defendants, inasmuch as such claims are subject to a six-year statute of limitations (see CPLR 213 [1]).
Defendants also argue that the petition does not assert any cause of action or seek any relief that is authorized by CPLR Article 78. The petition does not allege that Defendants failed to comply with any mandatory statutory duty (see CPLR 7803 [1]), or acted without or in excess of jurisdiction (see id. 7803 [2]). The petition does not identify any administrative determination by Defendants, much less allege that such a ruling amounted to a breach of lawful procedure, legal error, or abuse of discretion, as required to plead a claim under CPLR 7803 (3). Neither does the petition allege that Defendants issued a determination after an evidentiary hearing, as required to assert a claim under CPLR 7803 (4).
Plaintiff argues that there is no statute-of-limitations impediment to determining the underlying issue in dispute because challenged determination was issued in 2025 through correspondence. Plaintiffs also argue that CPLR Article 78 is the proper mechanism for bringing the matter to the Court for adjudication because Defendants are acting in excess of jurisdiction and their determination was arbitrary and capricious (see CPLR 7803 [2], [3]).
This matter was commenced via an order to show cause seeking the following relief:
(a) [G]ranting a judgment declaring that Petitioner 545 Warren Street Housing Development Fund Corporation and its shareholders may sell and assign cooperative apartments in the building located at 545 Warren Street, Brooklyn, New York 11217 (the "Building") without the review or approval of Respondents;(b) Granting a judgment declaring that the Building, Petitioner, and its shareholders are no longer subject to any resale restrictions under the federal HOME Program or the Regulatory Agreement;(c) Granting a judgment declaring that the affordability restrictions applicable to the Building under the Regulatory Agreement have expired;(d) Granting a judgment declaring that Petitioner may amend its Proprietary Lease to remove any requirement for the Housing Trust Fund Corporation's approval or adherence to its procedures without the consent of Respondents;(e) Granting a judgment declaring that Respondents have no right to review, approve, or reject any sales of cooperative apartments in the Building; and(f) [F]ashioning such other and further relief as the Court may deem just, proper and equitable" (NYSCEF Doc No. 13, order to show cause, at 2).The Court finds that the dispute congealed in 2025 when the issue of re-selling an apartment arose. It was in 2025 that any cause of action accrued. However, the dispute is not in the nature of a government determination. It involves the construction of the documents which created the subsidized housing development corporation. In other words, it is a dispute which calls for a declaratory judgment. This is not an Article 78 matter.
"If a court has obtained jurisdiction over the parties, a civil judicial proceeding shall not be dismissed solely because it is not brought in the proper form, but the court shall make [*2]whatever order is required for its proper prosecution" (CPLR 103 [c]). The Court deems this proceeding to be an action for declaratory judgment. The order to show cause and petition are deemed to constitute a summons and complaint. Also, Plaintiff's petition and supporting papers are deemed to constitute a motion for summary judgment in its favor. Defendants' affirmation in opposition and in support of their cross-motion is deemed to constitute Defendants' answer. Also, Defendants' papers are deemed to constitute a cross-motion for summary judgment dismissing the complaint.[FN3]
(See Matter of State of New York (Essex Prop. Mgt., LLC), 152 AD3d 1169 [4th Dept 2017]; Hodges v Beattie, 68 AD3d 1597 [3d Dept 2009]; Fragoso v Romano, 268 AD2d 457 [2d Dept 2000].)

Discussion of Underlying Dispute
Plaintiff's claims rest entirely on the contention that under the applicable U.S. Department of Housing and Urban Development regulation, the Building's Affordability Period expired after fifteen years. But that assertion contradicts the plain language of the regulation:
(4) Periods of affordability. The HOME-assisted housing must meet the affordability requirements for not less than the applicable period specified in the following table, beginning after execution of the instrument that requires the recapture of the HOME investment or recordation of the resale restrictions for sale to the next homebuyer. Execution of the instrument that requires the recapture of the HOME investment or recordation of the resale restrictions for sale to the next homebuyer may only occur after the housing meets the participating jurisdiction's property standards in accordance with § 92.251(c)(3) and the property title is transferred to the homebuyer. The per unit amount of HOME funds and the period of affordability that they trigger are described more fully in paragraphs (a)(5)(i) (resale) and (ii) (recapture) of this section. The period of affordability is based on the total amount of HOME funds invested in the housing.

Table 1 to Paragraph (a)(4)

Homeownership assistance HOME amount per-unit

Minimum period of 

 affordability in years 

Under $25,000

5

$25,000 to $50,000

10

Over $50,000

15

(5) Resale and recapture.The participating jurisdiction must establish the resale or recapture requirements that comply with the standards of this section and set forth the requirements in its consolidated plan. HUD must determine that they are appropriate and must specifically approve them in writing.(i) Resale.Resale requirements must ensure, if the housing does not continue to be the principal residence of the family for the duration of the period of affordability, that the housing is made available for subsequent purchase only to a buyer whose family qualifies as a low-income family and will use the property as the family's principal residence. The resale requirement must also ensure that the price at resale provides the HOME-assisted homeowner a fair return on investment (including the homeowner's investment and any improvements) and ensure the housing will remain affordable to a reasonable range of low-income homebuyers. The resale price is the fair return on investment added to the original sales price of the property, subject to market conditions. The participating jurisdiction must specifically define "fair return on investment" and "affordability to a reasonable range of low-income homebuyers," and specifically address how it will make the housing affordable to a low-income homebuyer in the event that the resale price necessary to provide a fair return is not affordable to the subsequent homebuyer. The period of affordability is based on the total amount of HOME funds invested in the housing.(A) Permissible methods of determining fair return and the resale price include but are not limited to the following:(1) Itemized formula. To determine fair return on investment and resale price, the participating jurisdiction may use an itemized formula to add or subtract common, clearly defined factors that increase or decrease the value of a homeowner's investment in the property over the term of ownership. This formula must include the value of capital improvements and the sum of the downpayment and all principal payments by the homeowner on the loan secured by the property. The formula may depreciate the value of the capital improvements and may take into consideration any reduction in value due to property damage or delayed or deferred maintenance of the property condition. The fair return on a homeowner's investment under this formula is calculated by taking the sum of the defined factors for the homeowner's investment in the property over the term of ownership and multiplying this amount by a clearly defined, publicly accessible index or standard. (NYSCEF Doc No. 1, petition ¶ 18, quoting 24 CFR § 92.254 [a].)Based on the amount of HOME funds received per unit, the table referenced in the regulation sets the "Minimumperiod of affordability" for the Building as 15 years (id. [emphasis added]). Thus, the clear language of the controlling federal regulation requires recipients of HOME subsidies to maintain its affordability and resale restrictions for "not less than" a "minimum" of fifteen years. That is confirmed by the history of the applicable regulations. "The HOME Program was enacted in 1990. In 1991, HUD explained in an interim rule that 'the terms of affordability . . . are minimums, and participating jurisdictions have authority to lengthen these terms if they desire.' 56 C.F.R. §§ 65312, 65331." (NYSCEF Doc No. 18, Hair aff, ¶ 11.) "In a final rule issued in 2013, HUD confirmed that '[m]any participating jurisdictions already impose periods of affordability that greatly exceed the required minimum periods in § 92.252.' 78 C.F.R. §§ 44628, 44641." (Id. ¶ 12.)
It is also consistent with common sense. As Defendants point out, "[t]he term 'minimum' [*3]in any context means the smallest action that attains compliance: minimum sentence, minimum wage, minimum standards, and minimum contacts establishing personal jurisdiction" (id. ¶ 38; accord Black's Law Dictionary [12th ed. 2024] ["constituting the smallest acceptable or possible quantity in a given case"]). "Minimum" is not the maximum or the ideal (see Matter of Cadence GG (Lindsay II.), 124 AD3d 952, 953 [3d Dept 2015]). It is the baseline (see Nicholson v Scopetta, 3 NY3d 357, 370 [2004]).
Furthermore, at least one court has considered — and rejected — a claim that the HOME Program's minimum affordability period should be deemed the maximum (see NYSCEF Doc No. 18, Hair aff, ¶ 45, citing Matter of Williams v New York State Div. of Hous. & Community Renewal, Index No. 158555/2018 [Sup Ct, NY County 2019]).
The entire history of federally-legislated subsidized home ownership militates toward interpreting foundational documents in a manner which places limitations on reselling so as to maintain affordable housing in urban areas (see generally John M. Kerekes, The Housing and Community Development Act Of 1992: Affordable Housing Initiatives May Have Found a Home, 18 Seton Hall Legis J 683 [1994]). "As a means to keep single-family homes that were assisted with HOME funds affordable to low-income families, the NAHA required the participating jurisdictions to include resale restrictions on subsequent purchases of these housing units.[[FN4]
] In lieu of providing additional HOME assistance to a subsequent first-time homebuyer, the new law provides the participating jurisdictions with the flexibility of recapturing the HOME investment provided the recaptured funds are utilized to assist other first-time homebuyers.[[FN5]
]" (Id. at 715-[*4]716.) Plaintiff and its shareholders are not permitted to receive a windfall by selling on the open market, which would not only violate the law and the terms of the documents referred to hereinabove, but would remove much needed housing from New York's stock of reasonably priced housing for low-income residents.
The foundational documents for the development of the Building, its acquisition by Plaintiff, and the sale of shares in the Building's cooperative corporation, i.e., the Regulatory Agreement executed by Plaintiff's predecessor and HTFC on September 15, 2000; the General Project Description; a Cooperative Offering Plan dated July 3, 2022; and the Proprietary Lease between Plaintiff and each shareholder-tenant, all reference the 30-year Affordability Period. Shareholders bought in with knowledge of this.
The Court holds that compliance with HOME obligations and requirements for a 30-year period is required. The Affordability Period is 30 years. Shares of Plaintiff shall not be sold on the open market until such Affordability Period expires. DHCR and HTFC have the authority to review, approve, and reject all sales of cooperative units within the building until 2032.

 Conclusion
Accordingly, it is hereby ORDERED as follows:
(1) Plaintiff 545 Warren Street Housing Development Fund Corporation's re-classified motion for summary judgment declaring that it and its shareholders may sell and assign cooperative apartments in the building located at 545 Warren Street, Brooklyn, New York 11217 without the review or approval of Defendants; that the Building, Plaintiff, and its shareholders are no longer subject to any resale restrictions under the federal HOME Program or the Regulatory Agreement; that the affordability restrictions applicable to the Building under the Regulatory Agreement have expired; that Plaintiff may amend its Proprietary Lease to remove any requirement for the Housing Trust Fund Corporation's approval or adherence to its procedures without the consent of Defendants; and that Defendants have no right to review, approve, or reject any sales of cooperative apartments in the Building; and for such other and [*5]further relief as the Court may deem just, proper and equitable (Motion Seq. No. 1) is DENIED.
(2) Defendant's cross-motion, pursuant to CPLR 3211 (a) (1) and (7), to dismiss the petition, now deemed the complaint, based on documentary evidence and for failing to state a cause of action (Motion Seq. No. 2), is GRANTED.
And, further, it is ADJUDGED that
(1) The Affordability Period applicable to the cooperative building located at 545 Warren Street, Brooklyn, New York 11217, is 30 years.
(2) Compliance by Plaintiff 545 Warren Street Housing Development Fund Corporation and its shareholders with HOME obligations and requirements for a 30-year period is required.
(3) Shares of Plaintiff shall not be sold on the open market until the Affordability Period expires in 2032.
(4) Defendants New York State Division of Housing and Community Renewal, its commissioner, and Housing Trust Fund Corporation possess the authority to review, approve, and reject all sales of cooperative units within the building until 2032.

Footnotes

Footnote 1:. A transcript of the oral argument may be procured from the court reporter.

Footnote 2:. The caption refers to the parties as "Plaintiff" and "Defendants." The Court likewise will do so — unless the terms are set forth in a quotation — even though this matter was commenced as a special proceeding, in which parties are usually classified as Petitioner and Respondent.

Footnote 3:In it memorandum of law, Defendants alleged, "It must be dismissed based upon the documentary evidence and for failure to state a cause of action, citing to CPLR 3211 (a) (1) and (7).

Footnote 4:The footnote stated:
 42 U.S.C. s 12745(b) (1992). The NAHA intended to lessen the decrease in the available stock of affordable housing by including resale provisions on subsequent purchases of 
HOME-assisted housing. Id. When the NAHA was initially drafted, the SBHUA Committee was aware that the supply of affordable housing was threatened by two important factors: (1) the potential to convert affordable housing into market-rate housing "through mortgage prepayments and other methods of terminating low-income affordability restrictions" and (2) considerable deterioration and default as a result of insufficient federal subsidies and program income. S. Rep. No. 316 , supra note 49, at 18, reprinted in 1990 U.S.C.C.A.N. 5780.

 The NAHA's resale restrictions made subsequent purchases available only to other qualified low-income homebuyers and at a price consistent with established guidelines as determined by a participating jurisdiction. NAHA s 215(b)(4). Such guidelines provide that the initial owner could realize a fair return on investment, including improvements, and the participating jurisdiction must ensure that the home will remain affordable to other potential low-income homebuyers. (The Housing and Community Development Act Of 1992: Affordable Housing Initiatives May Have Found a Home, 18 Seton Hall Legis J at 715 n 165.)
Footnote 5:. The footnote stated:
 24 C.F.R. s 92.254(a)(4)(i)-(ii) (1993). The new law affords the participating jurisdiction an option with respect to subsequent purchases of HOME-assisted units. Id. It enables the participating jurisdiction to recapture the HOME funds that were invested in an initial home purchase and reinvest those funds into another first-time homebuyer purchase when the initial home is sold to a non-eligible homebuyer. Id. In an earlier interim rule, dated December 22, 1992, HUD required "the participating jurisdiction to recapture the entire net proceeds when the net proceeds are insufficient to repay the full HOME subsidy, thus allowing the homeowner zero investment recovery." Id. This was amended to allow the homeowner to recover the amount of investment (i.e., downpayments, principal payments and other capital improvements), or at least, a percentage of the investment. Id. This option allows reasonable investment recovery in steady or depreciating markets, where the recapturing of the entire amount of HOME funds is not possible. 58 Fed. Reg. 34,135 (1993).

 Another option allows the participating jurisdiction to pro rate the owner's return on investment when the net proceeds are less than the initial HOME investment. 24 C.F.R. s 92.254(a)(4)(ii) (1993). The recaptured amount of HOME funds may be used for a portion that is the equivalent of the time remaining in the homeowner's affordability period. Id. (Id. at 716 n 166.)